James O'BRYAN, Duane Wilbert, Isaac McKinley, Thomas Jackson, Thomas Dorsey, John Phillips, Earl McClaren, Dale Falk and James Brotzman, Individually and on behalf of all other persons who have been, are, or will be confined in the Saginaw County Jail, Plaintiffs,

v.

The COUNTY OF SAGINAW, MICHIGAN; James Kelly, in his official capacity as Sheriff of Saginaw County, Fred Clark, in his official capacity as Deputy Sheriff for Saginaw County, Benjamin L. Schrader, Michael J. Wegner, Carl A. Roggow, Rene C. DeSander, Robert C. Worley, Julius Sutto, Joe T. Davis, Marie E. Davis, Albert Napier, Frank J. Paskiewicz, Norman E. Howell, Robert Alfred Gage, George E. Warren, Jr., Robert C. Pressprich, John M. Ryan, in their official capacity as members of the Saginaw County Board of Commissioners, Dorothy Kovaleski, in her official capacity as Auditor for Saginaw County, Defendants.

No. 75–10075.

United States District Court,
E. D. Michigan, N. D.

Jan. 11, 1978.

---

Lawrence F. Gambino, Phillip H. Snelling, Alan S. Ells, Legal Services of Eastern Michigan, Saginaw, Mich., Delores M. Coulter, Legal Services of Eastern Michigan, Flint, Mich., Alan W. Houseman, Legal Services of Eastern Michigan, Washington, D. C., for plaintiffs.

William S. Bovill, David B. Meyer, Jerome E. Burns, William E. Jungerheld, Saginaw, Mich., for defendants.

## FINAL JUDGMENT AND PERMANENT INJUNCTION

JAMES HARVEY, District Judge.

This action came on for trial before the Court, Honorable James Harvey, United States District Judge, presiding, and the issues having been duly tried and a decision having been duly rendered;

IT IS HEREBY ORDERED AND ADJUDGED as follows:

1. That the plaintiffs are the above named individuals and all persons who have been, are, or will be confined in the Saginaw County Jail;

2. That the defendants are the above named individuals in their named official capacity and their successors in interest;

3. That the defendants and their predecessors in interest by their practices and procedures have violated plaintiffs' rights as guaranteed by the First, Eighth and Fourteenth Amendments to the Constitution of the United States of America.

WHEREFORE, IT IS HEREBY ORDERED AND ADJUDGED that the defendants, their agents, and employees are hereby PERMANENTLY ENJOINED from violating said rights of plaintiffs and are hereby REQUIRED under penalty of contempt to abide by the following practices and procedures, to wit:

1. The following terms shall be given the following meaning for purposes of this decree:

A. "Inmates" shall mean all persons confined in the Saginaw County Jail, whether pretrial detainees or convicted inmates;

B. "Pretrial detainees" shall mean all persons who are confined in the Saginaw County Jail without having been convicted of any offense for which they are respectively confined;

C. "Convicted inmates" shall mean all persons who are confined in the Saginaw County Jail after having been convicted of an offense for which they are respectively confined;

D. "Convicted" shall mean the official entry in the court file of a judgment of conviction or the imposition of a sentence of incarceration, whichever first occurs;

E. "Admission" or "admitted" shall mean the arrival at the Saginaw County Jail for purposes of confinement in the Saginaw County Jail.

F. "Admitted to the general population of the jail" shall mean any placement within the jail whereby the admitted inmate is able to make physical contact with any other inmate who has been confined in the jail in excess of forty-eight hours;

G. "Jail" shall mean the Saginaw County Jail;

H. "Unable to purchase" shall mean in the case of inmates admitted to the jail less than two weeks, the lack of funds either in the respective inmate's commissary account or on the respective inmate's person, sufficient to provide for the price charged for an item or items and in the case of inmates admitted for two weeks or more, a commissary account for said inmate that has a two-week average balance of under two ($2.00) dollars;

I. "Contraband" shall mean all things the possession of which, under the circumstances, is prohibited by either state or federal law.

2. This decree shall be effective immediately except where and limited specifically to those portions where a later effective date is specifically stated.

### 3. ADMISSIONS PROCEDURE:

A. Effective January 30, 1978, no inmate shall be admitted into the general population of the jail except in accordance with the Classification Procedure Section, *infra,* and all inmates shall be so classified within forty-eight hours of admission.

B. Any person suffering from coma, fever, hallucination, unconsciousness, advanced state of intoxication, or for whom symptoms of withdrawal from alcohol or controlled substances is observed, or who has head injuries, broken bones, or other serious injury, shall be denied admission and taken to the nearest medical center for diagnosis and prescribed treatment. If, in the opinion of the hospital's doctors, such inmate can be returned to the jail, such inmate shall be housed in the infirmary and placed under constant surveillance, and treatment shall be provided as prescribed by the hospital's physicians.

C. All inmates on admission to the jail shall be provided with a minimum of one pair of clean socks, two clean sheets, and one clean blanket.

D. All inmates unable to purchase a toothbrush or toothpaste shall be furnished these items without charge on either admission to the jail or at such later date as the respective inmate becomes unable to purchase such, whichever first occurs, provided, however, that in the event that an inmate furnished with said toothbrush or toothpaste at no expense subsequently has funds deposited to his or her commissary account so that the account has a balance of two ($2.00) dollars or more, defendants may deduct from such inmate's account the reasonable expense of said items.

E. All inmates upon admission shall be allowed to place unlimited local calls for a total period of fifteen minutes duration and to place long distance calls within the same period, provided that the long distance calls need not be allowed unless such are placed on a "collect" basis.

### 4. CLASSIFICATION PROCEDURE:

A. The classification procedure shall be conducted as follows:

a. Inmates to be classified are those who have been booked and have not been released prior to the classification interview. The classification interview shall be conducted each morning on Monday, Tuesday, Thursday, Friday, and Saturday so that no inmate shall be required to wait more than forty-eight hours to be classified;

b. On each morning for classification, personnel assigned to inmate classification shall obtain the names of all inmates in temporary holding cells and shall interview said inmates to determine the criteria listed in subsections B. and C. of this section.

c. At the classification interview each inmate shall be given a brief orientation describing the purpose of the interview, visiting hours at the jail and explaining any questions the inmates may have concerning the offense with which they are charged and criminal court procedure;

d. At the classification interview each inmate shall be provided with a copy of this "Final Judgment and Permanent Injunction" until such time as an "Inmate Guide" is approved by the Court and published by defendants and thereafter all inmates brought to the assignment office shall be provided with a copy of the said Inmate Guide. Such Inmate Guide shall be explained to each inmate to apprise the inmate of how he or she is expected to behave and of his or her rights and privileges and of the programs and services available to inmates of the jail;

e. Interviews will be conducted by an inmate assignment officer using an interview sheet to elicit the information listed in subsections B. and C. of this section;

f. The intake physical examination shall be administered during this period as is described more fully in the Physical Examination section, *infra,* and the results thereof shall be reported to the inmate assignment officer.

(1) Effective January 30, 1978, no inmate shall be admitted to the general population of the jail except after having received said physical examination and a determination having been made in accordance therewith that the admission of the inmate to the general population of the jail will not create an undue risk to the health of any inmate.

(2) No inmate who is mentally ill, who is suffering a physical illness of a serious nature, or who has tuberculosis, venereal disease or any other communicable disease shall remain in the jail unless a suitable course of treatment for the inmate can be and is safely and effectively maintained without endangering thereby the health or safety of the remainder of the inmate population.

B. The purpose of a classification procedure is to assess the individual needs of inmates and to provide for proper management of the jail. In the classification and assignment of inmates to living units, the following criteria shall be met:

a. Pretrial detainees shall be housed separately from convicted inmates or convicted inmates shall be accorded the same rights and privileges provided in this decree for pretrial detainees;

b. Juveniles shall be housed separately from adult inmates and shall be housed such that they have minimal voice and visual contact with adult inmates. Juveniles shall also be provided with close supervision.

c. Male inmates shall be housed separately from female inmates;

d. Narcotic addicts and alcoholics shall be housed separately from non-addicted inmates and provided special treatment as is prescribed by the jail physician or other physician;

e. Inmates who because of their criminal record, past escape attempts, belligerent conduct or their actions within the facility, are determined to be a threat to the safety of other inmates or whose safety is threatened by other inmates shall be housed separately from other inmates;

f. Inmates who are mentally ill or who are a substantial threat to their own safety should not be kept in jail if at all possible. If incarcerated, such shall be housed separately from those who are neither mentally ill nor a threat to their own safety and shall be provided with close supervision.

g. Inmates suffering physical illness of a serious nature shall be housed in the infirmity section.

h. Inmates with tuberculosis, venereal disease, or other communicable diseases which are not then of a serious nature shall be housed in the infirmary section or separately from the rest of the inmate population;

i. Any physical or mental limitation or handicap and any particular aptitude, skill, or ability of any inmate shall be noted and considered in assigning work programs and educational or vocational training classes in a manner that is commensurate with the inmate's needs and abilities.

C. Any right or privilege provided by this decree may be denied to any inmate for whom it has been determined prior to such

denial by the administrator of the jail that allowance of such particular right or privilege to the particular inmate would create an unreasonable security risk, provided, however, that effective January 30, 1978, no inmate shall be denied any right or privilege on the grounds that to allow such would create an unreasonable security risk except as follows:

a. Any inmate previously convicted of or who is then charged with any escape or attempted escape from confinement under the provisions of state or federal law or who has escaped or attempted escape from confinement while in the jail may be denied contact visitation, chapel attendance or recreation outside of the inmate's cell, or any combination of such;

b. Any inmate previously convicted of or who is then charged with, under the provisions of state or federal law, the possession, sale, distribution or receipt of any controlled substance (i. e. illegal drugs), or who is found in possession of any controlled substance while confined in the jail, may be denied the right to receive publications from any source but not the right to receive publications mailed directly from the publisher;

c. Such other exceptions as are submitted by defendants and are specifically approved by the Court.

D. Any right or privilege provided by this decree may be denied to any inmate for whom it has been specifically determined prior to such denial by the administrator of the jail upon the recommendation of any physician or psychiatrist that allowance of such particular right or privilege to the particular inmate would create an unreasonable risk to the physical or mental health and well being of said inmate.

E. Each inmate's classification shall be reviewed at least once every thirty-one days by the administrator of the jail, except that any inmate who is housed separately because of classification under subsection (e) or (f) of subsection B. of this section, or who is or may be denied any right or privilege because of classification under subsections C. or D. of this section shall have said classification reviewed at least every seven days by the administrator of the jail.

F. Any inmate classified under subsection (e) or (f) of subsection B. of this section or under subsections C. or D. of this section shall be forthwith informed of said classification and of its effect and of the inmate's right to appeal said classification:

a. Upon request by the inmate or his or her counsel, said inmate shall be accorded an appeal within forty-eight hours which shall include:

(1) A written statement to the inmate of the classification and its effect, a statement of reasons for the classification, and a statement of the time and date of the hearing, prior to the hearing;

(2) A hearing identical to the one set forth in subsection (b) of subsection D. of Section 9. for disciplinary proceedings for alleged major rule violations.

(3) A written statement of the decision on appeal and of the reasons for the decision, a copy of which shall forthwith be provided to the inmate.

b. Appeal proceedings shall not be used to impose disciplinary sanctions or otherwise punish inmates for violations of facility rules or other misconduct.

G. An accurate, complete log book shall be kept of all classification decisions, including: initial classification, dates classification was reviewed, any change in classification, and date of change, notices provided to the inmate, procedures used, and any findings.

5. PHYSICAL EXAMINATIONS:

A. Effective January 30, 1978, no inmate shall remain confined in the Saginaw County Jail in excess of forty-eight hours without having received a physical examination.

B. The physical examination shall be administered as follows:

a. Inmates shall be examined by a physician except that the examination may be conducted by licensed or certified nurses or medically trained technicians under the direction of a physician if such are provided

with specific instructions by the physician as to when the physician should be consulted;

b. The physical examination shall include the necessary laboratory tests for hemoglobin, tuberculosis, and venereal disease;

c. The physical examination shall include the "Procedure for Physical Examination's (sic)" submitted by defendants as Exhibit "c" on November 25, 1977.

d. If there is reasonable cause to believe a female inmate is pregnant, a physician shall provide directions for her care and treatment.

6. RIGHTS AND PRIVILEGES:

The following rights and privileges shall be provided subject to the limitations set forth specifically under "Classification Procedure", *supra*, and "Disciplinary Proceedings," *infra* :

A. VISITATION:

The following visitation provisions are effective January 30, 1978:

a. The visitation hours shall be as follows:

(1) 2:30 p.m. – 4:30 p.m. on each Monday;

(2) 6:30 p.m. – 8:30 p.m. on each Tuesday;

(3) 6:30 p.m. – 8:30 p.m. on each Wednesday;

(4) 2:30 p.m. – 4:30 p.m. on each Thursday;

(5) 6:30 p.m. – 8:30 p.m. on each Friday;

(6) 2:30 p.m. – 4:30 p.m. on each Saturday;

b. All inmates shall be allowed to receive visitors and all inmates shall be allowed a minimum of three visits per week of twenty minutes duration per visit or two visits per week of thirty minutes duration per visit during the visitation periods set forth above in subsection a. *supra*. In addition, pretrial detainees shall be allowed unlimited visitation during these periods provided that such need not be allowed in any particular case where to allow such would thereby prevent any other inmate from obtaining the minimum visitation provided for herein.

c. Pretrial detainees shall be allowed a minimum of three visitors during any one visit and to visit with whomever he or she chooses during the visitation periods provided above. Convicted inmates shall be allowed a minimum of three visitors during any one visit and to visit with immediate family members, including any children of the convicted inmate and regardless of the age of said children and, in addition, shall be allowed to visit with any other person who in the opinion of the administrator of the jail would not thereby create an unwarranted security risk.

d. Subject only to those limitations set forth specifically under the Classification Procedure Section, *supra*, and the Disciplinary Proceedings Section, *infra*, no inmate shall be denied contact visitation and all inmates shall be provided with contact visitation whenever an inmate is allowed to receive visitors under the terms of this decree, except that any inmate shall be allowed non-contact visitation for any particular occasion upon the inmate's specific request.

e. Whenever contact visitation is required, the setting of the visitation shall be such that the inmate and visitor(s) are able to touch unobstructed by mechanical barriers, walls, partitions, or bars between the inmate and the visitor(s).

f. Whenever non-contact visitation is allowed, the presently existing non-contact visitation areas may be utilized for visitation purposes provided that the inmate and visitor(s) are provided with a visitation telephone which is fully functioning.

B. LETTERS AND TELEPHONES:

a. All inmates on admission and thereafter who are unable to purchase such shall be provided each upon request with any necessary papers, pens, envelopes and stamps to communicate with the attorney for all inmates herein, namely, Legal Services of Eastern Michigan, 110½ North Michigan Avenue, in Saginaw, or to any other attorney, and with any necessary papers, pens, envelopes, stamps and notarial services to communicate with this Court or with any other Court, and all pretrial detainees unable to purchase such shall be provided each upon request with paper, pens, en-

velopes, and stamps sufficient to mail one letter of personal correspondence per week, provided, however, that in the event that an inmate furnished such paper, pens, envelopes, stamps or notarial services subsequently has funds deposited to his or her commissary account so that the account has a balance of two ($2.00) dollars or more, defendants may deduct from such inmate's account the reasonable expense of said items.

b. All inmates shall be allowed telephone usage on admission as is set forth under "Admissions Procedure", *supra*. Additional telephone usage shall be allowed as follows:

(1) All inmates shall be allowed unlimited local calls for a total period of ten minutes a week per inmate;

(2) Any inmate not receiving visitors within any given week shall be allowed an additional ten minutes of telephone usage in the following week;

(3) Pretrial detainees shall each be allowed additional telephone usage of unlimited local calls for a total period of ten minutes upon returning from a court appearance;

(4) All inmates shall be allowed to place long distance calls during the above provided periods, provided that the long distance calls need not be allowed unless such are placed on a "collect" basis.

C. EXERCISE:

Each inmate shall be provided with the opportunity of two hours per week of exercise or recreation outside of the respective inmate's cell. The defendants shall purchase and maintain such equipment as is determined by the Saginaw County Sheriff to be necessary to carry out this program. The weight lifting machine and floor mats proposed by defendants shall be kept in use for inmates or suitable alternatives shall be provided.

D. LAW LIBRARY:

a. The defendants shall establish and maintain a limited law reference library in a single cell within the jail composed of one set of each of the following:

(1) Volume 1, *Prisoners Rights*, published by Matthew Bender;

(2) *Gillespie's Michigan Criminal Law and Procedure with Forms;*

(3) Titles 18, 28, and 42 of the United States Code, with annotations;

(4) The penal codes and Criminal Procedure volumes of the laws of the State of Michigan;

(5) The Constitution for the State of Michigan and for the United States of America.

b. Access by inmates shall be allowed to said law reference library in the following manner:

(1) All inmates shall have unlimited access provided that no other inmate has requested access for the same period.

(2) When two or more inmates request access for the same period, access shall be allowed as follows:

(a) Except as provided in (b) and (c), every inmate shall be required to yield access after having had access for ½ hour upon another inmate requesting use of the law reference library;

(b) Pretrial detainees not represented by counsel on an offense for which they are respectively confined shall be allowed two hours of access per week prior to being required to yield access to any other inmate;

(c) Convicted inmates not represented by counsel on post-conviction proceedings on an offense for which they are respectively confined shall be allowed two hours of access per week prior to being required to yield access to any other inmate other than pretrial detainees who are not represented by counsel, as set forth above;

(d) Requests for access shall be scheduled with first priority to pretrial detainees not represented by counsel on an offense for which they are confined, second priority to convicted inmates not represented by counsel on post-conviction proceedings on an offense for which they are confined, and last priority to all other inmates. Within these three groups, priority shall be given in

the order in which the request was made with highest priority to the request first in time.

c. All inmates shall be allowed to order and to retain in their respective cells the *Prisoners' Self-Help Litigation Manual* available from the National Prison Project, Suite 1031, 1346 Connecticut Avenue, N.W., Washington, D.C. 20036.

## E. RECEIPT OF PUBLICATIONS:

All inmates shall be permitted to receive newspapers, magazines, books, and other types of publications which are legally available to the public generally, regardless of whether such publications are received through the mail or from some other source, except that:

a. Inmates need not be allowed to accumulate more than four magazines and a reasonable number of books in their cells at one time, and defendants may require that newspapers be disposed of daily.

b. Any inmate receiving subscription magazines or newspapers shall terminate delivery before leaving the jail or such materials may be kept by the jail and placed in general library circulation.

c. Defendants may withhold delivery of any newspaper, magazine, book or other type of publication for a period not to exceed forty-eight hours in order to inspect the same and may refuse delivery of any of such where they have a specific reason to believe that delivery to, or possession of the particular item by, an inmate would thereby allow the entry of contraband into the jail or would thereby create a security risk. In any case where delivery is so refused, the respective inmate for whom the item was intended shall be promptly notified in writing of such and of the specific reason therefor and of his right to a hearing on the issue if he so requests, and the inmate involved shall be allowed, upon request, a hearing on such decision in the same manner as provided for in disciplinary proceedings for minor rule violations.

## F. STREET CLOTHES FOR COURT APPEARANCES:

Each inmate shall be provided with his or her own street clothes for any or all court appearances whenever such is so requested by the inmate. Nothing in this provision requires street clothing to be purchased for or furnished to an inmate at the expense of any of the defendants.

## G. RELIGIOUS SERVICES:

a. Religious services shall be provided to all inmates desiring to attend pursuant to the program outlined and proposed by Chaplain Phil Halverson and presented to the Court on November 1, 1977, as Exhibit "A".

b. The previous practice of restricting attendance at religious services to those persons with a bond of $5,000.00 or less shall no longer be followed.

## 7. STRUCTURAL ALTERATIONS:

The Court having found previously that structural alterations are required to effect contact visitation, and defendants having suggested that contract visitation can be implemented without any structural changes, the implementation of structural alterations shall proceed as follows:

A. On or before January 30, 1978, defendants shall submit a final complete proposal specifically setting forth the manner in which contact visitation is to be provided in the facilities as such presently exist. Specifically, such proposal shall provide for the manner in which 150 inmates are to receive a total of one hour of contact visitation per inmate per week within the visitation periods set forth in subsection "a" of subsection "A" of Section number "6", stating specifically the physical facilities to be used to achieve such, or within such additional visitation periods that defendants propose.

B. If the proposal required by subsection A of this section is not timely submitted, or if following submission it is not accepted and specifically approved by the Court, structural alterations shall be implemented as follows:

a. The six non-contact visitation areas presently existing on each side of the second floor of the jail, the same being a

total of 12 non-contact visitation areas, shall be modified by placement of a corridor doorway into each area and by placement of a table and four chairs inside each for use as a contact visitation area.

b. The modifications as set forth above shall be completed by August 1, 1978.

8. SUMMONING GUARDS:

The intercom and speaker system which defendants have represented is presently installed and capable of being monitored in the central security guard area of the jail, and which allows an inmate to summon a guard by voice communication, shall be employed and monitored at all times. Inmates shall be instructed as to the use of this system to summon guards.

9. DISCIPLINARY PROCEEDINGS:

A. No inmate shall be disciplined for exercising or attempting to exercise in a lawful manner any right or privilege set forth in this decree.

B. No right or privilege set forth in this decree may be denied to any inmate for disciplinary reasons except to the extent and in the manner specifically set forth below or subsequently approved by the Court:

a. The following rights or privileges as listed in subsections (1)–(9) may be suspended for a period not to exceed one week as punishment for abuse of that particular right or privilege, provided that no such shall be suspended on such grounds after January 30, 1978, unless defendants shall have promulgated a list of proposed specific "abuses" and the proposed maximum punishment therefor, included within which is the alleged violation, and such is submitted to and specifically approved by the Court, and provided further that in all cases the "Procedures for Minor Rule Violations" is followed as set forth *infra:*

(1) Contact visitation;

(2) Non-contact visitation;

(3) Access to the law reference library;

(4) Papers, pens, envelopes and stamps for personal correspondence;

(5) Papers, pens, envelopes, stamps and notarial services for correspondence to attorneys or to courts;

(6) Telephone usage other than said usage as is set forth under "Admissions Procedures" and for usage provided for when returning from a court appearance;

(7) Receipt of publications;

(8) Chapel attendance;

(9) Recreation outside of the inmate's assigned cell.

b. Any of the rights or privileges listed above in subsections (1)–(9) of subsection a. may be denied an inmate for any period of time as punishment for their use or attempted use in any effort to effect or to attempt any major rule violation as set forth in subsection b. of subsection C. of this section, provided that in all such cases the "Procedure for Major Rule Violations" is followed as is set forth *infra.*

C. No punishment shall be imposed on any inmate subsequent to January 30, 1978, on the grounds that the inmate to be punished has committed a major or minor rule violation unless the defendants shall have promulgated a list of proposed violations and the maximum punishments therefor, included within which is the alleged violation, and such is specifically approved by the Court, except for as is specifically provided in the following subsections a. and b.

a. The following are recognized as minor rule violations which may be punished by restriction of television or commissary privileges, or both, for a period not to exceed 48 hours:

(1) Throwing or wasting food;

(2) Rattling cell bars or otherwise summoning guards under pretext of an emergency;

(3) Refusing to follow instructions given by a guard;

(4) Failing to keep clean one's self or one's cell;

(5) Making false claims or reports against inmates or guards;

(6) Disruptive conduct during chapel services.

b. The following are recognized as major rule violations which may be punishable

by placement in a single cell, by loss of accrued good time, by restriction of commissary, and television privileges for a period not to exceed thirty days, by denial of any right or privilege set forth in subsections (1)–(9) of subsection a. of subsection B. of this section where such right or privilege has been used to effect or in an attempt to effect the alleged major rule violation at issue, or by any combination of the above; or by prosecution in a court of appropriate jurisdiction:

(1) The act of escaping, attempting to escape, or aiding and abetting any inmate to escape, or to attempt to escape from the jail;

(2) The act of inflicting, attempting to inflict, or aiding and abetting another to inflict or to attempt to inflict bodily injury on any person, including: assaulting or attempting to assault correctional officers; sex offenses, attempted sex offenses and sexual assaults; fighting, rioting or attempting to incite a riot; the infliction of punishment under pretense of law on any inmate by the initiation of or participation in "Kangaroo Courts";

(3) The theft or destruction, attempted theft or destruction, or the aiding and abetting of any theft or destruction of any property of another person or of the County;

(4) The possession or receipt of any contraband, including: any attempt to receive or aiding and abetting another to receive any contraband by having such brought or in an attempt to have such brought into the jail;

(5) The act of selling or attempting to sell any prescribed medication to any other inmate.

c. Any inmate who is alleged to have committed any major rule violations shall be advised that he has the right to remain silent, that anything he says can and may be used against such inmate at a subsequent trial; that he has the right to consult with counsel prior to answering any questions and that if he cannot afford counsel, an attorney will be appointed at no expense to himself for defense of any action filed against him in a court of law.

D. All disciplinary actions taken in the Saginaw County Jail shall be done in conformance with the following procedures prior to punishment:

a. Procedure For Minor Rule Violations:

(1) A hearing officer shall be designated for each shift from command officers;

(2) A report alleging a rule violation shall be filed with the hearing officer by the complaining party;

(3) Such hearing officer shall investigate each reported violation by speaking with the complaining party and the party complained of and any other persons necessary;

(4) The hearing officer shall evaluate the evidence and make a finding as to whether a violation has occurred and the type of punishment to be given and note the same in a written report;

(5) In no case shall a guard be allowed to summarily punish an inmate;

(6) In those cases where the hearing officer is a complaining party or witness, a different hearing officer shall be appointed to determine the case.

b. Procedures For Major Rule Violations:

(1) A hearing board shall be created consisting of a captain or his designate in the Sheriff's Department and one non-jail staff person, such as a representative from the inmate school staff, selected by the Sheriff, to hear evidence of the rule violation and determine punishment if merited;

(2) The procedure to be followed prior to infliction of any punishment shall be as follows:

(a) written notice to the inmate of the alleged rule violation prior to the hearing before the Board;

(b) a hearing before the above mentioned board, at which the inmate shall be provided with the right to present witnesses and confront his or her accusers;

(c) if the inmate is not mentally competent to defend himself or herself or if

the issues are complex, a non-attorney representative shall be appointed by a non-staff hearing officer to assist the inmate;

(d) a written report shall be provided to the inmate of the hearing decision and of the evidence relied on by the board.

c. Emergency situations:

1. In emergency situations where the safety of persons or security of the jail is in jeopardy, such as fights between inmates, an inmate may be placed immediately in a single cell provided that the appropriate hearing procedure for major rule violations shall be followed within twenty four (24) hours, except upon weekends, in which case the hearing may be postponed until Monday.

d. The use of physical force as a means of discipline is prohibited. There shall be no discipline of an entire group of inmates unless it is determined that all inmates to be disciplined participated in the rule violation. The removal of clothing shall not be used as a punishment. The discipline used shall be reasonably related to the rule violation and to the circumstances surrounding the violation.

e. An accurate, complete log book shall be kept of all discipline indicating date, name, conduct, rule violated, procedures, findings, and any punishment.

## 10. USE OF INCORRIGIBLE CELLS:

A. No inmate shall be placed in an incorrigible cell or other cell without basic amenities except upon a prior determination by the administrator of the jail or by a shift commander in said administrator's absence that said placement is required to protect the safety of the inmate involved or the security of the jail and that such cannot be achieved by placement in a single cell.

B. No inmate with identifiable suicidal tendencies shall be placed in an incorrigible cell or other cell without basic amenities unless a guard is in attendance at all times.

C. Placement in an incorrigible cell shall be limited to that period of time that such placement is required to achieve the pur-pose of placement, which period of time is not to exceed twenty-four hours.

## 11. INMATE GUIDE:

An Inmate Guide shall be drafted by the Sheriff of Saginaw County to include a comprehensive list of rights and privileges of inmates specifically described to prevent inconsistent application, arbitrariness and favoritism in implementation. Said Inmate Guide shall be submitted to the Court for approval by February 24, 1978.

A. The Inmate Guide shall include:

a. An explanation of all programs, work opportunities and services available to inmates; and the method of selection, program capacity and manner of application;

b. The classification procedures, the disciplinary rules and regulations of the jail providing for specifically listed offenses, penalties, and disciplinary procedures;

c. Procedural rules for the filing, hearing and consideration of inmates' complaints and grievances;

d. Procedural rules for presentation of inmate medical requests;

e. Rules for visitation by family, friends, clergymen and attorneys;

f. Rules regarding mail procedures.

B. Said Inmate Guide, upon approval of the court, is to be published within thirty days following said approval in English and Spanish, publicly posted in the jail, distributed to all present inmates and each new inmate upon admittance, made available to attorneys, friends and family of inmates and revised and republished regularly.

## 12. INSPECTIONS:

The attorneys for plaintiffs shall frequently inspect the jail to determine whether this decree is being complied with and to report on such to the Court. Defendants shall allow weekly access to the jail for purposes of such inspection, including access for purposes of discussion with prisoners, upon receiving one hour's notice, to any attorney of record for the plaintiffs in this cause, to any United States Marshal, and to any other person that the Court by its Order does designate.

13. POSTING:

All previous orders posted in this cause by Order of this Court shall be removed and in place thereof, two copies of this decree shall be posted in a clearly visible manner in each cell block of the jail.

Defendants shall file proof of service of the above with the Court on or before January 30, 1978.

AND IT IS FURTHER ORDERED AND ADJUDGED that plaintiffs recover from defendants their costs of action and their reasonable attorneys fees.

IT IS SO ORDERED.