Michelle BAZZETTA, Stacy Barker, Toni Bunton, Debra King, Shante Allen, Adrienne Bronaugh, Alesia Butler, Tamara Prude, Susan Fair, Valerie Bunton and Arturo Bunton, through his Next Friend Valerie Bunton, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Kenneth McGINNIS, Director of Michigan Department of Corrections; Michigan Department of Corrections, Defendants.

No. 95–73540.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 6, 1995.

768

Michael J. Barnhart, Detroit, MI, for plaintiffs.

George N. Stevenson, Lansing, MI, for defendants.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

EDMUNDS, District Judge.

This matter comes before the court on Plaintiffs' motion for preliminary injunction to prevent enforcement of certain Michigan prison regulations restricting prisoner's visitation rights. For the following reasons, Plaintiffs motion for preliminary injunction is denied.

### I. Facts

Plaintiffs are a group of women prisoners and their prospective visitors protesting new Michigan Correctional Rules regarding visitation. The new rules in question are:

1. Prisoners may only receive visitors under the age of 18 who are their children, step-children or grandchildren (thus prisoners may not see minor siblings, cousins, nieces, nephews, etc.) (Rule 791.6609(2)(b));

2. Prisoners may not visit with their natural children if their parental rights have been terminated for any reason (Rule 791.6609(6)(a));

3. Prisoners may only have 10 visitors who are not "immediate family" (immediate family does not include nieces,

nephews, aunts, uncles, cousins, in-laws) (Rule 791.6609(2));

4. No minor children may visit unless accompanied by an adult legal guardian with proof of legal guardianship or an immediate family member (Rule 791.6609(5));

5. Members of the public may be on only one prisoner's visitation list (not including immediate family members), thus activists cannot visit more than one prisoner (Rule 791.6609(2)(a));

6. Prisoners may be denied all visitors (except from clergymen or an attorney) upon two major misconducts involving substance abuse (Rule 791.6609(11)(d));

7. All former prisoners are excluded from visiting current prisoners who are not "immediate family."

Plaintiffs contend that the above rules violate their First, Eighth and Fourteenth Amendment Constitutional rights, and brought suit in Michigan State Court pursuant to 42 U.S.C. § 1983. The rules were scheduled to go into effect on October 2, 1995, so Plaintiffs brought a motion for a temporary restraining order and preliminary injunction to enjoin enforcement of the new rules. The Defendants removed the action to this court under the authority of 28 U.S.C. §§ 1441(a) and 1446. The court entered a temporary restraining order enjoining enforcement of the rules until a preliminary injunction hearing could be held.

### II. Standard for Preliminary Injunction

The availability of injunctive relief is a procedural question that is governed by federal law. *Southern Milk Sales, Inc. v. Martin,* 924 F.2d 98 (6th Cir.1991). The Sixth Circuit has held that a court must consider four factors in deciding whether to issue a preliminary injunction:

1. whether the movant has shown a strong or substantial likelihood of success on the merits;

2. whether the movant has demonstrated irreparable injury;

3. whether the issuance of a preliminary injunction would cause substantial harm to others; and

4. whether the public interest is served by the issuance of an injunction.

*Parker v. U.S. Dept. of Agric.*, 879 F.2d 1362, 1367 (6th Cir.1989). The foregoing factors should balanced. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.1985). Where the three factors other than the likelihood of success all strongly favor issuing the injunction, a district court is within its discretion in issuing a preliminary injunction if the merits present a sufficiently serious question to justify a further investigation. *Id.* at 1230. Alternatively, the court may also issue a preliminary injunction if the movant "at least shows serious questions going to the merits *and* irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued." *Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1270 (6th Cir.1985) (citations omitted).

### III. Analysis

#### A. Likelihood of Success on the Merits

■ To prevail in a civil rights action under 42 U.S.C. § 1983, a plaintiff must plead and prove that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the Constitution and laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Section 1983 alone creates no substantive rights; rather, it is a vehicle by which a plaintiff may seek redress for deprivations of rights established in the Constitution or federal laws. *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2695 n. 3, 61 L.Ed.2d 433 (1979). The statute applies only if there is a deprivation of a federal right. *See e.g., Paul v. Davis*, 424 U.S. 693, 699–701, 96 S.Ct. 1155, 1159–1160, 47 L.Ed.2d 405 (1976); *Baker*, 443 U.S. at 146–47, 99 S.Ct. at 2695–96. Thus, "[t]he first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws'" of the United States. *Baker*, 443 U.S. at 140, 99 S.Ct. at 2692.

■ The Plaintiff prisoners claim that the new prisoner visitation rules will deprive them of rights under the First, Eighth and Fourteenth Amendments to the United States Constitution. Prison regulations that implicate a prisoner's constitutional rights will be upheld when "it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). The non-prisoner Plaintiffs claim that the new rules will deprive them of rights under the First and Fourteenth Amendments. Prison regulations must respect the constitutional rights of non-prisoners and are subject to that level of scrutiny determined by the Supreme Court for the particular constitutional violations in question. *Cf. Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) (Court applied strict scrutiny analysis to infringement of non-inmate's First Amendment rights).

#### 1. Are the Constitutional Rights of the Plaintiff Prisoners Implicated by the New Regulations?

#### a. Rules restricting visitation of minor children and the overall number of visitors.

■ Plaintiffs first claim that the regulations restricting visitation of minor children and the overall number of visitors a prisoner may see to ten, violate their constitutional right of freedom of association. Convicted prisoners, however, have no absolute, unfettered constitutional right to unrestricted visitation with any person, regardless of whether that person is a family member or not. *Bellamy v. Bradley*, 729 F.2d 416, 420 (6th Cir.), *cert. denied*, 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984); *Lynott v. Henderson*, 610 F.2d 340 (5th Cir.1980). Rather, visitation privileges are subject to the discretion of prison officials. *McCray v. Sullivan*, 509 F.2d 1332 (5th Cir.), *cert. denied*, 423 U.S. 859, 96 S.Ct. 114, 46 L.Ed.2d 86 (1975). In *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977), the Supreme Court stated,

The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration.... Perhaps the most obvious of the First Amendment rights that are necessarily curtailed by confinement are those associational rights that the First Amendment protects outside of prison walls. The concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside the penal institution.

433 U.S. at 125–25, 97 S.Ct. at 2537–38. The Sixth Circuit has yet to opine whether prisoners have a First Amendment freedom of association right to visitation. *Long v. Norris*, 929 F.2d 1111 (6th Cir.), *cert. denied*, 502 U.S. 863, 112 S.Ct. 187, 116 L.Ed.2d 148 (1991) ("[W]e have not decided the degree to which prison inmates retain their freedom of association.... Given the sparse authority on this issue, we hold that any such right, if it exists, is not clearly established." *Id.* at 1118). Other Circuit courts have held that no First Amendment right to visitation exists. *White v. Keller*, 438 F.Supp. 110, 115 (D.Md.1977), *aff'd per curiam*, 588 F.2d 913 (4th Cir.1978) (finding that prisoner visitation occurs for social rather than ideological purposes and further that "visitation does not seem to be a right, but merely one means of effecting a wholly distinct right." *Id.* at 117); *Thorne v. Jones*, 765 F.2d 1270, 1274 (5th Cir.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1198, 89 L.Ed.2d 313 (1986) (finding no First Amendment right of freedom of association for prisoners to have physical association). Courts have further held that constitutional challenges asserting a right to visitation fail even to state a claim. *McCray*, 509 F.2d at 1334. Moreover, courts in this district have previously held that prisoner's constitutional rights are not implicated by the restriction of visitation. *O'Bryan v. County of Saginaw, Mich. (O'Bryan III)*, 529 F.Supp. 206, 211 (E.D.Mich.1981); *Mawby v. Ambroyer*, 568 F.Supp. 245, 249 (E.D.Mich. 1983).

This court is aware that other courts have come to a different conclusion. *See e.g., Laaman v. Helgemoe*, 437 F.Supp. 269, 320 (1977) (and cases cited therein); *Nicholson v. Choctaw County*, 498 F.Supp. 295, 310 (S.D.Ala.1980). Yet the stronger reasoning and weight of authority lead this court to find that no First Amendment right of freedom of association exists for prisoners.

▪ Plaintiffs next argue that the visitation rules restricting which minor children may visit a prison violate their Fourteenth Amendment fundamental right to family integrity. The Fourteenth Amendment prohibits a State from depriving a person of life, liberty, or property without due process of law and protects "the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). Plaintiffs are attempting to extend the analysis and reasoning of *Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (plurality opinion), to the current context.

In *Moore*, the Court struck down the city's zoning laws which prohibited a grandmother from living with her son and her grandson. *Id.* The Court held that the concept of liberty in the Fourteenth Amendment includes the right to associate and reside with one's relatives. *Id.* The Plaintiffs here argue that the new rules impermissibly interfere with family relationships as did the zoning ordinance in *Moore*, and thus violate the Plaintiffs' liberty interest in family association.

▪ Plaintiffs' argument is unavailing. The Supreme Court in *Moore* was concerned with the fact that a grandmother and grandson could not live together. In this case, grandparents and parents may see their minor grandchildren and children. The Plaintiffs are seeking to extend the reasoning of *Moore* to even further extensions of the family tree. While dicta in *Moore* discusses extended family relationships, holding for the Plaintiffs in this case would go well beyond established precedent. Furthermore, *Moore* involved free citizens who wished to live together. That case is quite factually distinct from the current case where prisoners are petitioning for visitation rights. Incarceration by its very nature necessarily restricts the familial relationship in ways that would

be unacceptable in free society: imprisonment deprives inmates of the freedom "to be with family and friends and to form the other enduring attachments of normal life." *Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). For example, it is well established that prisoners have no right to conjugal visits. *Turner*, 482 U.S. at 95–96, 107 S.Ct. at 2264–65. The new regulations do not infringe upon the Plaintiffs' fundamental right of family integrity.

 The Plaintiffs also contend that the rules restricting visitation are cruel and unusual punishment in violation of the Eighth Amendment. Eighth Amendment violations occur when prison conditions result in the "unnecessary and wanton infliction of pain," are "grossly disproportionate to the severity of the crime warranting imprisonment," or result in an "unquestioned and serious deprivation of basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 346–47, 101 S.Ct. 2392, 2398–99, 69 L.Ed.2d 59 (1981). However, "to the extent that conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offense against society." *Id.* at 347, 101 S.Ct. at 2399. The Sixth Circuit has indicated that prohibiting visitation to prisoners does not violate the Eighth Amendment. *Bellamy v. Bradley*, 729 F.2d 416 (6th Cir. 1984). Plaintiffs, therefore, have no claim that the regulations violate the Eighth Amendment.

### b. Rule prohibiting prisoners from visiting with their natural children if their parental rights have been terminated for any reason.

 Parents who terminate their parental rights lose all constitutional rights in regard to those children upon entrance of the termination order. *See Davis v. Thornburgh*, 903 F.2d 212, 220 (3d Cir.1990). Thus, the children are treated as non-family members. Once again, prisoners have no absolute constitutional right to visitation with strangers, and thus this rule does not violate any of the prisoners' rights.

### c. Rule prohibiting minor children from visiting the prison unless accompanied by an immediate family member or adult legal guardian with proof of legal guardianship.

 Assuming that *Moore* may be read to find a fundamental right of parents and grandparents to associate with their immediate family members within the prison context, any restriction on that right must be "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). In *Turner*, the Court listed four factors that courts should consider in determining whether such a prison regulation is reasonable:

1. whether a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it exists;

2. whether there are alternative ways for the prisoner to exercise the implicated constitutional right;

3. what impact would accommodation of the implicated constitutional right have on the prison administration;

4. whether the regulation is an exaggerated response to prison concerns.

*Id.* at 89–90, 107 S.Ct. at 2261–62.

The Defendants stated in their brief and during the preliminary injunction hearing, that their legitimate penological interests are: 1) preventing children from suffering physical and sexual abuse, 2) preventing children from being injured in the non-child-proofed visitation rooms, and 3) limiting the instances in which children can be used to smuggle weapons, drugs or other contraband into the prisons. Defendants further articulated that family members and guardians are best suited to controlling children.

 Courts have consistently held that the maintenance of prison security and prevention of contraband from entering the prison are "legitimate penological" interests. *See Turner*, 482 U.S. at 92–93, 107 S.Ct. at 2263–64; *Procunier*, 416 U.S. at 413–14, 94 S.Ct. at 1811–12; *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Having found the penological interest to be legitimate, then

in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations[,] courts should ordinarily defer to [prison administrators'] expert judgment in such matters.

*Block v. Rutherford,* 468 U.S. 576, 586–89, 104 S.Ct. 3227, 3232–34, 82 L.Ed.2d 438 (1984). In this case, the Plaintiffs have failed to come forward with substantial evidence that the Michigan prison officials exaggerated their response. Moreover, Defendants articulated problems associated with supervising children and their position that family members are best suited to control a child. Having put forth a valid, legitimate interest, and in the absence of any evidence showing that officials have exaggerated their response, the court finds no constitutional violation.

**d. Rules restricting members of the public to being on only one prisoner's visitation list at a time and prohibiting former prisoners from visiting prisoners other than immediate family.**

As to the non-prisoner plaintiffs, their rights to visit prisoners are similarly restricted by the fact of the prisoner's incarceration. The court in *White* explained,

It is the further opinion of this court that the Supreme Court itself has suggested there is no general right to prison visitation for either the prisoners or the public. In *Pell v. Procunier* [417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974) ] . . . the Court held that prisoners have no constitutional right to visit with members of the press and that members of the press have no constitutional right to visit with selected prisoners. Although the Court's principal concern was freedom of expression—press and speech—rather than freedom of association, the result was nonetheless that the two groups had no right to visit with each other. Implicit in the Court's opinion is that prisoners have no right to associate face-to-face with any particular member of the public, and members of the public have no right to so associate with any particular prisoner. . . . The foregoing clearly explains why this court believes there is no right among prisoners to receive visitors.

The court believes that the non-existence of a right among would-be visitors to visit prisoners is a necessary corollary whose justification is apparent by resort to the *reductio ad absurdum.*

*White,* 438 F.Supp. at 117–119 (aff'd per curiam). *See also, Fennell v. Carlson,* 466 F.Supp. 56, 59 (W.D.Okla.1978).

■ Plaintiffs cite *Procunier v. Martinez* for the proposition that this rule should be evaluated under the higher strict scrutiny standard because the rights of non-prisoners are implicated. That case did not hold that all cases implicating the rights of non-prisoners should be evaluated under strict scrutiny, rather, it held that prison regulations censoring a non-prisoner's mail restricted the non-prisoner's First Amendment rights, and as such had to be evaluated under the strict scrutiny standard. Courts have consistently distinguished between the rights of prisoners to communicate by way of mail and the ability of prisoners to receive visitors. Whereas First Amendment rights are implicated in the censorship of mail, prisoners and visitors have no First Amendment right to visitation because alternative means of exercising their First Amendment rights are available. Hence, no constitutional right is implicated by this rule.

**e. Rule permitting prison officials to permanently deny all visitation privileges upon two major misconducts involving substance abuse.**

■ This rule is discretionary, and at this time, Plaintiffs cannot demonstrate that any person of their class will be permanently deprived of all visitation upon two major misconducts involving substance abuse. Thus, this claim is not ripe for the court to adjudicate.

**B. Irreparable Injury, Balance of Harms and Public Interest**

Even assuming that the court would find that the Plaintiffs have met their burden as to these factors, since the Plaintiffs cannot show that a "serious question" as to the merits exists, this court cannot find in their favor.

## IV. The Eleventh Amendment

As a final matter, the Defendants contend that the Plaintiffs' have effectively sued the State of Michigan, and thus, this lawsuit is barred by the Eleventh Amendment. The Eleventh Amendment bars suits against a State or its agencies unless the State waives its immunity or Congress specifically abrogates the State's immunity. Claims for injunctive and declaratory relief made against state officials in their official capacity, such as those made in this case, however, are not barred by the Eleventh Amendment. *Doe v. Wigginton*, 21 F.3d 733, 737 (6th Cir.1994) (citing *Edelman v. Jordan*, 415 U.S. 651, 688, 94 S.Ct. 1347, 1367, 39 L.Ed.2d 662 (1974); *Ex Parte Young*, 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908)).

## V. Conclusion

Being fully advised on the merits and the pleadings, for the foregoing reasons, the court hereby **DENIES** Plaintiffs' motion for preliminary injunction.