**N.E.W. & C.M.W., et al., Plaintiffs,**

**v.**

**Aaron D. KENNARD, et al., Defendants.**

**No. 94–C–148 W.**

United States District Court,
D. Utah,
Central Division.

Jan. 7, 1997.

Brian M. Barnard, Andrea J. Garland, Salt Lake City, UT, for Plaintiffs.

Patricia J. Marlowe, Salt Lake County Attorneys Office, Salt Lake City, UT, for Defendants.

## MEMORANDUM & ORDER

BOYCE, United States Magistrate Judge.

Plaintiffs, N.E.W. AND C.M.W., et al., filed this action against Salt Lake County Sheriff Aaron D. Kennard and Salt Lake County under 42 U.S.C. § 1983 alleging that the policy of the Salt Lake County Metro Jail prohibiting persons younger than eight years old from visitation with inmates was unconstitutional and denied plaintiffs due process and equal protection of the law. Plaintiff Clifford Perry was, at the time the suit was filed, an inmate, pretrial detainee, at the Metro Jail. C.M.W. is under 8 years of age and is the natural child of Perry and plaintiff's next friend S.M.W. N.E.W. is a minor child less than 8 years of age. She was born January 10, 1994 and is the minor child of Perry and S.M.W. N.E.W. was born while Perry was incarcerated. Perry, because of the metro jail visitation policy, was denied visitation of the children. The policy is metro jail policy and procedures 7705.04. The policy allowed visitation by children under eight years old by approval of the "Jail Command." Jail visits are non-contact. Plaintiffs sought injunctive relief and compensatory and exemplary damages.

On February 4, 1994, the parties stipulated Perry could have visitation with his children and a motion for a temporary restraining order was then deemed moot (File Entry # 11). Defendants filed an answer and challenged plaintiff's standing, contending the policy was not being applied to them.

On August 24, 1994 the N.E.W. case # 94–C–148 W was consolidated with # 94–C–563 S in which W.R. and V.R. were plaintiffs. # 94–C–148 W is the case assignment. The defendants made a motion to dismiss the actions. The court dismissed damage actions against the defendants Kennard and Glad.[1] The court dismissed injunctive and declaratory claims of the minor children based on due process allegations. The court retained the damage claims against Salt Lake County on the basis of contentions of natural due process and equal protection violations.

Thereafter, plaintiffs made a motion for summary judgment (File Entry # 57). Plaintiffs asked for $1.00 damages each against Salt Lake County. The issue of injunctive and declaratory relief had been dismissed. Plaintiffs submitted a memorandum in support of their motion for summary

---

1. Captain Glad, the jail commander, was named a defendant in # 94–C–563 S.

judgment (File Entry # 58). The defendant, Salt Lake County, made a motion for summary judgment and submitted a memorandum (File Entry # 60). Salt Lake County, also made a motion to strike, from summary judgment consideration, a newspaper article which was submitted with plaintiff's motion for summary judgment. The newspaper article is hearsay not otherwise reliable or admissible and is stricken. It will not be considered on the motion for summary judgment. Salt Lake County also filed a memorandum in opposition to plaintiffs' motion for summary judgment (File Entry # 61) and plaintiff filed a memorandum in opposition to Salt Lake County's motion for summary judgment (File Entry # 67).

The case has been referred to the magistrate judge under 28 U.S.C. § 636(c); F.R.C.P. 73 on consent of the parties for full disposition by the magistrate judge.

*Factual Matter Related to Plaintiffs'
Motion For Summary
Judgment*

The plaintiffs submitted a statement of undisputed facts with their memorandum in support of summary judgment. D. Utah Rule 202(b)(4). Plaintiffs state that plaintiff Perry was incarcerated in the Salt Lake County Metro Jail in September, 1993 and remained in the jail until he was sentenced in March 1994. Perry had lived with S.M.W. and helped to raise C.M.W. Perry and S.M.W. produced N.E.W. as their biological offspring, born on January 10, 1994.

In October 1993, S.M.W. and C.M.W. went to the jail to visit Perry. The on duty officer asked S.M.W. to leave, citing jail policy preventing young children from visiting jail inmates. S.M.W. believed that there was no procedure whereby the child could visit Perry and C.M.W. was not brought to the jail again. S.M.W. only sought a non-contact visit.

In September, 1993, C.B. brought W.R. to visit her father, Rudy Remora, a pretrial detainee. The jail officer on duty refused the visit citing that children under eight could not visit inmates. The officer did not disclose alternative means by which visitation

could occur. The officer was apparently an operational level staff officer.

After S.M.W. was turned away, Perry filed two grievances with the jail (Exhibit E & F). He sought to have C.M.W. be allowed to visit Perry. The request was denied by staff personnel. On January 18, 1994, eight days after N.E.W.'s birth, Perry filed a grievance asking that N.E.W. be allowed a special visit, which was denied. Jail Policy Rule 7705.04, in effect at the time provided:

No visitors under age eight are permitted in the visiting or waiting areas at any time.... (b) [E]xceptions must be approved by the Jail Command.

Rule 7705.05 on special visits provides two other exceptions to the visitation rule, but these exceptions were not applicable to the plaintiff's situation. A set of jail rules issued to inmates states that visitation by children under eight is not allowed. Signs also advised visitors that children zero to seven could not visit. Apparently, no reference was made to the exception with permission of the jail command.

Perry filed this lawsuit on February 4, 1994. During a hearing for a temporary injunction on February 15, 1994 the defendants agreed to allow Perry two thirty minute visits a week with his children. On April 6, 1994 the Metro Jail issued a memorandum advising that special visits between prisoners and their children would be allowed and in June 1994, Rule 7705.04 was modified to make clear that visits between inmates and their children could occur. The policy now in Rule 8120.03(2) stated "children under age 8 may visit as a special visit. Contact Jail Administration for arrangements." Under the new policy visiting with children was allowed during morning hours, at times not open to regular visitation. Signs were posted indicating visiting of children was allowed. No problems have been experienced, except increased workload for staff. The demands were not prohibitive and no administrative problems have been encountered. Prior to the clarification of the policy, special visits were requested three or four times, two were granted and one involving a federal prisoner was refused.

The defendants submitted a memorandum in opposition to summary judgment (File Entry # 66). The defendants challenged some of the essential facts. However, defendants contend since February or March, 1992 special visits have been allowed and offered facts in two instances. Inmates could obtain special visits from jail staff or become informed on reading the rules. If a visiting facility was available at the time of the request, visitation would be allowed. The memorandum of April 6, 1994 saying that the Jail Administration would approve special visits between inmates and children was made after this suit was filed did not change jail policy, but was intended to clarify the existing policy. The same is asserted for the June, 1994 rule. The defendants contest the claim that change in jail policy was in any way the result of plaintiffs' suit.

Defendants say they have no knowledge involving the relationship between S.M.W., N.E.W., Perry and C.M.W. However, lack of ability to dispute the matter at summary judgment means the issue is uncontested because there is no material issue in dispute. Rule 56, F.R.C.P. Cpl. Mattingley and Lt. Merrick denied Perry's request for special visits. Neither person is a defendant in the suit nor a County policy maker. There is no evidence Sheriff Kennard or Captain Glad denied Perry's visitation request. Defendants also contest the number of special visits that may have been denied from March, 1992 to 1994. Captain Glad has no knowledge of the number, only that one involving a federal prisoner was denied a special visit with children.

### Factual Matter On Defendants' Motion for Summary Judgement

The defendants have made a separate motion for summary judgment and submitted a supporting memorandum (File Entry # 60).

The defendants admit N.E.W. and C.M.W. are under eight years of age and N.E.W. is the child of Perry and S.M.W. C.M.W. is the child of S.M.W., Perry's fiance. W.R. and V.R. are under eight years of age and the children of Rudy Romero, a former inmate at the Metro Jail. Metro Jail has a policy that persons under eight are prohibited from visitation, except special arrangements for visits may be made. The policy would prevent N.E.W., C.M.W., W.R. and V.R. from visitation of their fathers while they were at the jail during regular visitation but they could ask the jail command for special visits. The policy is based on security, safety, and administrative concerns and not because of the welfare of the children. This was because of the facility design, difficulty of taking little children into the visiting area, the disturbance caused by young children, litter, such as diapers and disrupting of other visitors (P.9 Deposition Capt. C. David Glad). Noise and restlessness of the children was seen as a problem (Id.).

Perry was a jail inmate from September 21, 1993 to May 25, 1994. Romero was an inmate from January 23, 1994 to August 2, 1994.

Plaintiff's memorandum in opposition (File Entry # 67) was also a reply to the opposition memorandum of the defendants to plaintiffs' motion for summary judgment. The plaintiffs' statement in opposition states many of the facts noted above as part of the plaintiff's motion for summary judgment and presents the facts in opposition in argument form.

### Standard for Summary Judgment

Each motion for summary judgment stands independently when cross motions are submitted and must be individually evaluated. *Heublein Inc. v. United States*, 996 F.2d 1455 (2nd Cir.1993); *Shook v. United States*, 713 F.2d 662, 665 (11th Cir.1983); *Central States Southeast and Southwest Areas Pension Fund*, 868 F.Supp. 995 (D.N.D.Ill.1994); 10A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 2720 (1983). The moving party must come forward with evidence that there is no material fact for resolution at trial. Thereafter, the non-moving party must come forward to show there is a dispute of a material fact that would preclude summary judgment *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Lake Hefner Open Space Alliance v. Dole*, 871 F.2d 943 (10th Cir.1989). If there is no material issue of fact, the court may grant or

deny summary judgment as the circumstances dictate. In this case there is no material issue of fact and both parties have taken that position.

### Natural Due Process Right

Plaintiffs have claimed a "natural due process" right to have visitation with each other while plaintiffs Perry and Romero were confined as pretrial detainees at the Salt Lake County Metro Jail. The plaintiffs' claim is one of substantive due process under the Fourteenth Amendment. The concept of due process in the substantive context must be a claim for protection of a fundamental right *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Bowers v. Hardwick,* 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986) ("implicit in ordered liberty" or "deeply rooted in the nation's history or tradition," 478 U.S. at 190, 106 S.Ct. at 2843–44). See also *Reno v. Flores,* 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). Although the right of association is a fundamental right in certain contexts, *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 460–61, 78 S.Ct. 1163, 1170–71, 2 L.Ed.2d 1488 (1958), and the sanctity of the family and family association is "deeply rooted in the nations history and tradition," *Moore v. City of East Cleveland,* 431 U.S. 494, 503, 97 S.Ct. 1932, 1938, 52 L.Ed.2d 531 (1977), prisoners in a lawful custodial situation have only a limited right of association. *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (right to marry, fundamental right to correspondence with other inmates is not a protected right); *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (limitation recognized on religious association in prison); *Kentucky Dept. Of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) (limitation on prison visitation is proper). A fundamental right may be restricted or denied if the limitation is "reasonably related" to a legitimate penological interest. *Turner v. Safley,* supra.

In *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) the Supreme Court held a pretrial detainee was not subjected to punishment, where the detainee was denied various rights, when there was no intent to punish and there was a rationale relationship to an operational goal or legitimate nonpunitive objective. The restrictions were not "purposeless." Id. at p. 539, 99 S.Ct. at p. 1874. The effective management of a detention facility is a valid objective. The court said:

> FN23. In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that "[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Pell v. Procunier,* 417 U.S. 817, 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974); see *Jones v. North Carolina Prisoners' Labor Union,* 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974).

441 U.S. at 540 n. 23, 99 S.Ct. at 1875 n. 23.

This court may not substitute its judgment as to what is appropriate for that of the state jail administrator, absent a showing that there is no objective basis for the restriction imposed or that is an exaggerated response. A presumption of reasonableness applies to prison or jail security regulations. *Turner,* supra, 482 U.S. at 83–85, 107 S.Ct. at 2258–60; *Harris v. Ostrout,* 65 F.3d 912, 916 (11th Cir.1995).

With specific regard to visitation, the Supreme Court in *Block v. Rutherford,* 468 U.S. 576, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984) held it was constitutional to deny contact visits to pretrial detainees held in the Los Angeles County Jail. It was a decision by "responsible, experienced administrators" that "such visits will jeopardize the security of the facility." Id. at p. 589, 104 S.Ct. at p. 3234. Restrictions placed on visitation for valid security or administrative purposes will

be upheld as to pretrial detainees. It should also be acknowledged that plaintiffs in these cases were not detained for extended periods such as is the case for prison inmates. See 468 U.S. at 583, 104 S.Ct. at 3231.[2]

Subsequently, in *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) the court considered visitation in a procedural due process context but the court addressed the nature of the inmate visitation interest. The court said, "Respondents do not argue—nor can it be contended in light of our prior cases—that an inmate's interest in unfettered visitation is guaranteed directly by the Due Process Clause." Id. at p. 460, 109 S.Ct. at p. 1908. Therefore, a claim for unrestricted visitation cannot be said to be fundamental per se. "The denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence ... and therefore is not independently protected by the Due Process Clause." Id. at p. 461, 109 S.Ct. at p. 1909. Although the latter phrase and the case address a sentenced prisoner, the substance is not less for pretrial visitation where administrative and institutional requirements necessarily impose restrictions on visitation. Heightened scrutiny is not the proper test for the validity of such restrictions. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). Rather the standard is one of whether the restriction is reasonably related to a legitimate institutional or correctional interest. *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *Mosier v. Maynard,* 937 F.2d 1521 (10th Cir.1991). See *Evans v. Johnson,* 808 F.2d 1427, 1428 (11th Cir.1987) (convicted prisoner); *Smith v. Matthews,* 793 F.Supp. 998 (D.Kan.1992) (pretrial detainee). In *Hayes v. Marriott,* 70 F.3d 1144, 1146–47 (10th Cir. 1995) the court observed that a "prisoner's constitutional rights must be exercised with due regard for requirements of prison administration". In *Caraballo–Sandoval v. Honstead,* 35 F.3d 521 (11th Cir.1994) the court held inmates do not have an absolute right to visitation, such privileges being subject to

prison officials discretion provided that visitation policies meet penological objectives. See also *Hutchcraft v. Roberts,* 861 F.Supp. 994 (D.Kan.1994).

In *Pell v. Procunier,* 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974) the Supreme Court, in the context of media access to prisoners, observed:

> When, however, the question involves the entry of people into the prisons for face-to-face communication with inmates, it is obvious that institutional considerations, such as security and related administrative problems, as well as the accepted and legitimate policy objectives of the corrections system itself, require that some limitation be placed on such visitations. 417 U.S. at p. 826, 94 S.Ct. at p. 2806.

Consequently, it cannot be concluded that plaintiffs had a natural due process right to visitation as children under eight years of age.

This is not a case where there is an absolute denial of visitation. *Valentine v. Englehardt,* 474 F.Supp. 294 (D.N.J.1979) (total ban on visitation is unconstitutional). The restriction on visitation of children under eight was not to protect children from any adverse psychological impact of seeing a parent in jail. *McMurry v. Phelps,* 533 F.Supp. 742 (D.W.D.La.1982). It was for security, safety and administrative reasons and subject to special approval.

Other federal courts have recognized visitation limitations on children are not unreasonable or discriminatory *Ford v. Beister,* 657 F.Supp. 607 (D.M.D.Pa.1986) (visitation limitation on children under 18); *Dawson v. Kendrick,* 527 F.Supp. 1252 (D.S.D.W.Va. 1981) (children under 12); *Navin v. Iowa Dept. Of Corrections,* 843 F.Supp. 500 (D.N.D.Iowa 1994) (children when accompanied by an adult); *Smith v. McDonald,* 869 F.Supp. 918 (D.Kan.1994) (denial of visitation with six year old son of inmate did not violate inmate's constitutional right). See also *Women Prisoners of the District of Columbia Department of Corrections v. District of*

---

**2.** The Salt Lake County Metro Jail is under a consent decree restriction as to inmate population. It is an overcrowded facility.

*Columbia,* 899 F.Supp. 659 (D.C.D.C.1995); *Bazzetta v. McGinnis,* 902 F.Supp. 765 (D.E.D.Mich.1995).

■ In this case, Salt Lake County policy allowed visitation with permission of the jail command. This was because of the facility design, difficulty with taking little children into the visitation area, problems of litter, disturbance by little children due to noise and restlessness. Security and safety were the clear concerns. Special visits were allowed if a visiting facility was available. Further, policy was clarified after the suit was filed. The policy was not changed. See *Smith v. McDonald,* supra. The Salt Lake County jail visitation policy as to children under eight rationally related to penological and administrative institutional interests and remains so.

■ Plaintiffs properly assert that Perry asked for special visits and filed grievances which were denied by lower level staff officers who were not defendants in this case or policy makers for the county. They are not parties to this action. There is no showing they were carrying out or making County policy. Therefore, there is no basis for finding County liability. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 817, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985); *Jantz v. Muci,* 976 F.2d 623 (10th Cir.1992); *Johnson v. Hardin County,* 908 F.2d 1280 (6th Cir.1990) (jailer not final policy maker).

Therefore, it must be concluded that plaintiffs had no due process right to jail visitation beyond that extended by Salt Lake County and that no right of visitation plaintiffs had was violated by Salt Lake County.

*Equal Protection*

■ The plaintiffs also assert an equal protection argument and contend the visitation classification was and is arbitrary and a violation of equal protection. Correctional administration policies and restriction will be upheld against a challenge of denial of equal protection if there is a rational basis for such

action. *Jones v. North Carolina Prisoners' Labor Union,* 433 U.S. 119, 136, 97 S.Ct. 2532, 2543, 53 L.Ed.2d 629 (1977). The classification in the Metro Jail policy in this instance, based on institutional interests of security, safety and administration is not irrational and the special visits practice appears successful in meeting needs of those concerned. Consequently, it cannot be concluded that plaintiffs were denied equal protection. *Dorrough v. Hogan,* 563 F.2d 1259 (5th Cir.1977). Further, there was no disparate treatment among similarly situated persons. The ultimate burden of proof is on the challenging party to establish a violation of equal protection of the law. *Concrete Works of Colorado Inc. v. City and County of Denver,* 36 F.3d 1513 (10th Cir.1994); *Cunico v. Pueblo School Dist. No. 60,* 917 F.2d 431 (10th Cir.1990). Plaintiffs have not met their burden. There has been no violation of equal protection by defendant Salt Lake County.

*Attorney Fees*

The plaintiffs contend that they are entitled to an attorney fee for pursuit of this litigation. It is contended the suit was a catalyst for change in the Salt Lake County visitation policy. This is not a class action where benefit to class may allow an attorney fee under 42 U.S.C. § 1985. In this case no benefit of any kind was achieved for W.R. and Rudy Romero. The only benefit for Perry, N.E.W., C.M.W., and S.M.W. is that, after the suit was filed, at a motion for preliminary injunction hearing, it was stipulated by the parties that Perry could have visitation at the jail with his minor children. The Salt Lake County Jail Policy since 1992 had been that visits with children under eight years of age could occur with permission of the jail command. The stipulation for visits was without court direction and in keeping with the jail policy, although the policy had arguably been misapplied by jail staff as to Perry. The jail commander Captain Glad, clarified the policy by issuing a memorandum that special visits would be approved and this was formally implemented in June 1994. Signs were posted advising inmates that they could seek special visitation. However, this did not affect plaintiffs. These were not changes in policy but action to make the

existing policy more clear. The plaintiffs did not prevail in either their damage or declaratory injunctive relief requests. The plaintiffs were not entitled to relief as a matter of law.

■ In *Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) the Supreme Court declared that a party could prevail in a civil rights suit by consent decree or judgment even if there was no admitted legal liability. In *Hewitt v. Helms,* 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987) the court said a party could prevail if the suit "produces voluntary action by the defendant that affords the plaintiff all or some of the relief he sought through a judgment ..." Some "relief on the merits" is required. Id. at p. 757, 107 S.Ct. at p. 2674. Perry was a jail inmate from September 21, 1993 to May 25, 1994 and was not confined in June 1994 when the regulation clarification was made. That could not help him. *Hewitt v. Helms,* supra. His only relief was a stipulation already in accord with the jail command and county policy.

In *Texas State Teachers Ass'n v. Garland Indep. School Dist.,* 489 U.S. 782, 791–92, 109 S.Ct. 1486, 1493–94, 103 L.Ed.2d 866 (1989) the court said to obtain an attorney fee the plaintiff must show a "material alteration of the legal relationship of the parties in manner which Congress sought to promote in the fee statute." Id. at p. 792–93, 109 S.Ct. at p. 1493–94. That did not occur here as plaintiff has not prevailed on any legal issue. Not even nominal damages are appropriate. The achievement, if any, was *deminimus,* Id. at p. 792, 109 S.Ct. at p. 1493–94. Plaintiff did not prevail on any "significant issue." 489 U.S. at 791, 109 S.Ct. at 1493. In *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) the Supreme Court suggested that if only minimal damages are awarded it may be appropriate not to award any fees. In this case, no damages are awarded.

■ In *Griffith v. State of Colorado, Div. Of Youth Services,* 17 F.3d 1323, 1329 (10th Cir.1994) the court held the failure of plaintiff to achieve any success in the litigation disqualified her from any award of fees. However, in *Koopman v. Water Dist. No. 1 of Johnson County, Kansas,* 41 F.3d 1417 (10th Cir.1994) the court held even though one dollar damages was awarded, plaintiff did achieve a significant benefit which is in accord the case from the Supreme Court's position *Texas State Teachers Assn.,* supra. Here no significant benefit was obtained, only a clarification and effective implementation of a policy already in existence.

■ A catalyst contention is asserted by plaintiffs that they effected changes in jail policy. The Tenth Circuit in *Supre v. Ricketts,* 792 F.2d 958 (10th Cir.1986) has required the result to be not merely a catalyst but "legally required." See also *Foremaster v. City of St. George,* 882 F.2d 1485, 1488–89 (10th Cir.1989) (plaintiff would have prevailed). See also *Luethje v. Peavine School District,* 872 F.2d 352, 354–56 (10th Cir. 1989). Recently, the court in *Kansas Health Care v. Department of Social and Rehabilitation Services,* 31 F.3d 1052 (10th Cir.1994) adhered to the same position. The change must be required by the constitution or federal law. Id. at p. 1054. Also, change "in position must have been required under the law." *City of Chanute v. Williams Natural Gas Co.,* 31 F.3d 1041, 1048 (10th Cir.1994). Under the circumstances of this case, the plaintiffs are not entitled to an award of attorney fees since no change required by the Constitution or federal law occurred. Therefore,

**IT IS HEREBY ORDERED** plaintiff's motion for summary judgment is denied. The defendant Salt Lake County's motion for summary judgment is granted and defendant Salt Lake County is entitled to judgment based on no claim for relief. The plaintiffs' motion for attorney fees is denied. Judgment may be entered in accord with this order.