**Joseph E. NAVIN, Jr., Desiree Navin, Plaintiffs,**

v.

**IOWA DEPARTMENT OF CORRECTIONS, Sheriff Dennis Blome, Sheriff Lt. Don Zeller, Defendants.**

No. C 92–0102.

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

Jan. 12, 1994.

On Motion for Reconsideration
Feb. 9, 1994.

Joseph E. Navin, Jr. and Desiree Navin, pro se.

Suzie A. Berregaard Thomas, Asst. Atty. Gen., Des Moines, IA, for Iowa Dept. of Corrections.

Scott C. Peterson, Linn County Attorney's Office, Cedar Rapids, IA, for Sheriff Dennis Blome and Sheriff Lt. Don Zeller.

## ORDER

JARVEY, United States Chief Magistrate Judge.

This matter comes before the court pursuant to defendants' December 21, 1993, motion for summary judgment (docket number 30). Plaintiff has filed no resistance to the motion. The motion is granted.

## UNDISPUTED FACTS

Plaintiff Joseph Navin, Jr. (Navin) has at various times been incarcerated in the Linn County Correctional Center (LCCC).[1] Navin's complaint alleges that defendants Linn County Sheriff Dennis Blome and the jail administrator at the time, Lt. Don Zeller, violated his constitutional rights by allowing Navin's 9–year–old daughter, plaintiff Desiree, only one, one-hour visit to Navin in over a year of incarceration. Navin is a single parent, and no other person is a legal guardian of Desiree.

Visitation at the LCCC is allowed in accordance with the stipulation order in *Smith v. Oxley*, C78–0059 and C78–0060. LCCC policy states that persons under the age of eighteen are not allowed to visit inmates unless accompanied by a parent or legal guardian. After Christmas 1991, defendant Zeller, on

---

1. Navin has also been incarcerated for significant periods of time at FCI Englewood in Littleton, Colorado. Navin is serving a 30–year sentence.

his own authority as jail administrator, determined that the policy should be altered to allow persons under the age of eighteen to visit if they were accompanied by their physical custodian, whether or not that physical custodian was a parent or legal guardian.

In April or May of 1991, defendant Zeller also allowed Desiree to make a "special visit" outside of the regular rules, policies, and procedures in the company of friends of Navin's. At some point during that visit, Desiree had to go to the bathroom, and was not permitted to return to the visiting area allegedly because jail officers stated that she had terminated her "special visit" when she went to the bathroom. At the time Navin filed his complaint, he alleged that he had not been allowed a visit by Desiree in over ten months and only the one visit in approximately two years of incarceration.

In December of 1993, the LCCC proposed a further revision of its visitation policies that would allow persons under the age of 18 to visit inmates if they are accompanied by a parent, legal guardian, physical custodian, or adult immediate family member. The LCCC is currently revising its Inmate's Rules and Regulations to reflect this change in policy.

Navin's complaint alleges that the LCCC's prevention of visits by Desiree constitutes "cruel and unusual punishment" and has inflicted extreme emotional distress on both Navin and Desiree. Navin asserts that as a result of Desiree's inability to visit her father, Desiree has suffered emotional injuries affecting her school work, attitude, and general well-being. Navin alleges a conspiracy by LCCC officials to prevent children from visiting the LCCC without a legal guardian, thus discriminating against single-parent inmates.

Defendants have moved for summary judgment on the ground that the LCCC regulations on visitation are reasonably related to a legitimate penological interest and that defendants have qualified immunity to any liability for deprivation of any constitutional rights of Navin or Desiree.

## CONCLUSIONS OF LAW

### 1. Standards For Summary Judgment

■ On a motion for summary judgment, the court considers the entire record. Fed-eral Rule of Civil Procedure 56 governing summary judgment states, in pertinent part:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motion and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

*Fed.R.Civ.P.* 56(b) & (c) (emphasis added); *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir.1991); *Moore v. Webster,* 932 F.2d 1229, 1231–32 (8th Cir.1991). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The court concludes that there are no genuine issues of material fact in this case, and therefore turns to consideration of whether defendants are entitled to judgment as a matter of law.

### 2. The Constitutionality Of Regulation Of Visitation By Minors

■ Prohibitions on visits by inmates' children are generally disfavored by the courts. Such rules potentially violate both the First Amendment rights of association of both the inmate-parent and the child as well as their due process right of personal privacy in activities relating to family relationships. *See, e.g., Morrow v. Harwell,* 768 F.2d 619, 626 (5th Cir.1985); *McMurry v. Phelps,* 533 F.Supp. 742 (W.D.La.1982); *Nicholson v. Choctaw County,* 498 F.Supp. 295 (S.D.Ala. 1980); *Valentine v. Englehardt,* 474 F.Supp. 294 (D.C.N.J.1979); *O'Bryan v. County of*

*Saginaw,* 437 F.Supp. 582 (D.C.Mich.1977), *supp. op.,* 446 F.Supp. 436 (E.D.Mich.1978); *Mabra v. Schmidt,* 356 F.Supp. 620 (W.D.Wis.1973).

Some courts recognize that inmates should be permitted visitation with their minor children without reaching the constitutional issues involved. *See, e.g., Ross v. Owens,* 720 F.Supp. 490 (E.D.Pa.1989); *Rutherford v. Pitches,* 457 F.Supp. 104 (C.D.Cal.1978); *Stewart v. Gates,* 450 F.Supp. 583 (C.D.Cal. 1978); *Lovern v. Cox,* 374 F.Supp. 32 (W.D.Va.1974); *cf. Agron v. Montanye,* 392 F.Supp. 454 (W.D.N.Y.1975). *See also* National Conference of Commissioners on Uniform State Laws, Model Sentencing and Corrections Act § 4–116 (1978) (setting forth various means of preserving parental relationships).

Furthermore, the rehabilitative benefits of visitation have been recognized. *Kozlowski v. Coughlin,* 871 F.2d 241, 242 (2d Cir.1989). The Second Circuit Court of Appeals quoted with approval from a consent decree that stated that "[t]he inmate visitor program [in New York state] is intended to provide inmates ... with an opportunity to maintain relationships with friends and relatives in order to promote better community adjustment upon release." *Id.* (citing N.Y.Comp. Code R. & Regs. tit. 7, § 200.1 (1988)).

As the decree implicitly recognizes, the link between visitation, rehabilitation, and prison security is more than tenuous. Not only has it been empirically demonstrated that preserving external relationships is a prerequisite to successful parole, *see, e.g.,* Commissioner [of the New York State Department of Correctional Services'] Task Force on Visiting, *Final Report* 2 (1984) (" '[T]he consensus of findings, should be emphasized.... It is doubtful if there is any other research finding in the field of corrections which can come close to this record.' ") (quoting E. Homer, "Inmate Family Ties: Desirable but Difficult," *Federal Probation,* Mar. 1979, at 47, 49), but visitation is also "an invaluable aid to safe and secure facility environments." *Id.* at ii (Letter from members of the Task Force to Commissioner Coughlin presenting Final Report).

*Id.* at 242–43. Nonetheless, "for convicted prisoners, visitation privileges are a matter subject to the discretion of prison officials." *Morrow v. Harwell,* 768 F.2d 619, 626 (5th Cir.1985) (dismissing claim of Eighth Amendment "cruel and unusual punishment" claim for restrictions on visitation) (quoting *Jones v. Diamond,* 636 F.2d 1364, 1376–77 (5th Cir.) (en banc), *cert. dism'd,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981), in turn quoting *McCray v. Sullivan,* 509 F.2d 1332, 1334 (5th Cir.), *cert. denied,* 423 U.S. 859, 96 S.Ct. 114, 46 L.Ed.2d 86 (1975)).

So too are matters of an outsider's rights to visit an inmate. *Mayo v. Lane,* 867 F.2d 374, 376 (7th Cir.1989). In *Mayo,* the plaintiff challenged an order by an official of the Illinois prison system that barred her from visiting any Illinois state prison. *Id.* at 374–75. The court analyzed the plaintiff's claim as follows:

[Plaintiff] sensibly does not argue that a person's natural liberty ... is infringed when he or she is forbidden to enter a prison. It is imprisonment that robs a person of natural liberty—not exclusion from prison....

[Plaintiff] argues that her natural liberty includes a right of association with members of her family, such as [her] grandnephew [who was an inmate in the prison], and that this right in turn comprehends the right to visit him in prison. This is not a frivolous argument. The concept of liberty in the Fourteenth Amendment has been held to embrace a right to associate with one's relatives. [Citations omitted.] But it is a slight argument, for reasons well discussed in a case factually similar to the present one, *White v. Keller,* 438 F.Supp. 110, 120 (D.Md.1977), aff'd per curiam, 588 F.2d 913 (4th Cir.1978). Prison necessarily disrupts the normal pattern of familial association, so lawful imprisonment can hardly be thought a deprivation of the *right* of relatives to associate with the imprisoned criminal. *Cf. O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 788, 100 S.Ct. 2467, 2476–77, 65 L.Ed.2d 506 (1980) ("members of a family who have been dependent on an errant father ... may suffer serious trauma if he is deprived

of his liberty or property as a consequence of criminal proceedings, but surely they have no constitutional right to participate in his trial or sentencing procedures"). *More fundamentally, the person with the primary stake in the deprivations cause by imprisonment is the prisoner himself, and he rather than his relatives is the proper party to complain about those deprivations.*

*Id.* at 375–76 (First emphasis in original; second emphasis added) (holding that plaintiff had no standing to pursue a claim of violation of constitutional rights). Although the court is disturbed by the adverse effects Navin has alleged are being suffered by his daughter, the claims brought here on behalf of both Desiree and Navin may properly be brought only by Navin.

■ "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). When a prison regulation impinges on an inmate's constitutional rights, however, "the regulation is valid if it is reasonably related to legitimate penological interests." *Id.*

■ The Eighth Circuit Court of Appeals recently summarized the inquiry that courts must make under *Turner* in *Smith v. Delo,* 995 F.2d 827 (8th Cir.1993).

> This examination focuses upon whether the regulation is rationally related to a legitimate and neutral objective, *Thornburgh v. Abbott,* 490 U.S. 401, 414, 109 S.Ct. 1874, 1882, 104 L.Ed.2d 459 (1989), whether alternative means for exercising the right exist, *id.* [490 U.S.] at 417, 109 S.Ct. at 1883, the impact accommodation of the right will have on others in the prison, *id.* [490 U.S.] at 418, 109 S.Ct. at 1884, and whether obvious, less-restrictive easy alternatives exist to the response taken by the officials. *Id.*

*Smith v. Delo,* 995 F.2d 827, 829 (8th Cir. 1993). Although the LCCC's restrictions on visitation by minors unless accompanied by an appropriate adult may impinge upon Navin's First, Eighth, and Fourteenth Amendment rights, the court concludes that the restrictions are reasonably related to legitimate penological interests.

■■ The Eighth Amendment prohibits punishments which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). Among "unnecessary and wanton" inflictions of pain are those that are "totally without penological justification," *Id.,* and which may involve either mental or physical pain. *Rodgers v. Thomas,* 879 F.2d 380, 384 (8th Cir.1989); *Cowans v. Wyrick,* 862 F.2d 697, 699–700 (8th Cir.1988). When considering an Eighth Amendment claim, the fact finder must consider the "totality of the circumstances" surrounding the punishment. *Rhodes, supra,* 452 U.S. at 362–63, 101 S.Ct. at 2407, *Rodgers, supra,* at 383.

■ The denial of prison access to a particular visitor "is well within the terms of confinement ordinarily contemplated by a prison sentence," *Hewitt v. Helms,* 459 U.S. 460, 468, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). It is therefore not an "unnecessary and wanton" infliction of mental pain "totally without penological justification" in violation of the Eighth Amendment. Nor is access to a particular visitor independently protected by the Due Process Clause. *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 461, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506 (1989) (holding that an inmate has no interest in unfettered visitation guaranteed directly by the Due Process Clause).

The court must therefore consider whether the restrictions on visitation by Navin's minor child are reasonably related to legitimate penological interests such that they may be sustained despite their potential violation of the First Amendment rights of association of the inmate-parent in this case. First, it must be noted that LCCC restrictions do not *prevent* or *prohibit* visitation by minors, as did the regulations in *Morrow v. Harwell,* 768 F.2d 619, 626 (5th Cir.1985), nor did any party in that case argue that a total prohibition would not violate constitutional rights.

Visitation by minors to the LCCC is currently *restricted* by requirements that a mi-

nor be accompanied by a parent, legal guardian, physical custodian, or adult immediate family member. The restrictions in force at the time the suit was filed limited visits to minors accompanied by a parent or legal guardian. The defendants argue that the restrictions meet the first requirements of *Turner* because they are reasonably related to interests in the security and tranquility of the LCCC. Defendants argue that the LCCC does not have adequate staff to deal with unaccompanied minors either in visiting rooms or waiting areas. Further, the defendants argue that other visitors to the LCCC might pose a danger to unaccompanied minors. Consequently, the defendants argue that the restrictions are reasonable and nondiscriminatory. The court agrees that the LCCC's restrictions are reasonably related to legitimate penological interests.

The next element of the *Turner* inquiry is whether alternative means for exercising the right exist. *Smith v. Delo*, 995 F.2d 827, 829 (8th Cir.1993). As a practical matter, there is no alternative to visitation to exercise the rights of association between inmates and their family members. The impact accommodation of the right of uninhibited visitation by minors will have on others in the prison, the next element of the *Turner* inquiry, is extensive. Unaccompanied minors could be very disruptive to the enjoyment of visitation by other inmates as visitation takes place in common areas, not one-on-one in separate rooms. Finally, the defendants argue that they have explored and instituted easy, less-restrictive alternatives to their earlier policy by widening the categories of adults who must accompany minor visitors. Even under the former policy, the LCCC considered and allowed other categories of adults to accompany minor visitors upon special request. The new regulations thus institutionalize the alternative practice already available. The court concludes that the LCCC's regulations are satisfactory on all points of the *Turner* inquiry and that Navin has suffered no violation of his constitutional rights. The court hopes that further compassionate review will cause the LCCC to continue to restructure visitation by minors to suit the benefits of such visitation identified at the beginning of this section.

### 3. *Qualified Immunity*

Although the court has concluded that there has been no constitutional violation, the court will address defendants' second legal ground for summary judgment, that they were entitled to qualified immunity even if a constitutional violation had been found. The court must make a three-part inquiry to determine whether the defendants are entitled to qualified immunity: First, it must determine whether the prisoner has asserted a violation of a constitutional right; second, whether the allegedly violated constitutional right was clearly established; and third, if, given the facts of the case, a reasonable official would have known that the alleged actions violated that right. *Foulks v. Cole County, Mo.*, 991 F.2d 454, 456 (8th Cir.1993); *Cross v. City of Des Moines*, 965 F.2d 629, 631–32 (8th Cir.1992). Navin has asserted a violation of his First, Eighth, and Fourteenth Amendment rights. Although these rights are clearly established in their general contours, their alleged violation by restrictions on visitation were far less clear. Consequently, a reasonable official would not have known that the alleged actions violated the rights even had the court concluded that the rights had been violated. The officials here would be entitled to qualified immunity even had the court's decision above been different.

Upon the foregoing,

IT IS ORDERED

That defendants' December 21, 1993, motion for summary judgment (docket number 30) is granted. The Clerk shall enter judgment in favor of the defendants.

## ON MOTION FOR RECONSIDERATION

This matter comes before the court pursuant to plaintiff's January 24, 1994, *pro se* motions for reconsideration of the court's January 12, 1994, order (docket numbers 34 and 35). The motions are granted in part and denied in part.

In the court's January 12, 1994, order, the court granted defendants' motion for summary judgment and dismissed the case. Plaintiff Joe Navin, Jr. (Navin), had filed no

**506**

timely resistance to the motion for summary judgment. Navin now asserts that there is a genuine issue of material fact and that defendants are not entitled to judgment as a matter of law, nor are they entitled to qualified immunity.

 "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Upon reconsideration, the court concludes that Navin has not presented such a factual dispute; rather, Navin asserts that there is some set of facts under which he might have been able to prevail. Specifically, Navin contends that there were some people who could have brought his daughter to the jail to visit him that would satisfy the criteria for visitation under present Linn County Jail rules. However, these were not the facts presented to the jail decision-makers at the time Navin asserts his constitutional rights were violated.

In its order granting summary judgment, the court concluded first that there had been no constitutional violation, and further that even if there had been, defendants were entitled to qualified immunity. Although the rights Navin complains were violated are clearly established in their general contours, their alleged violation by restrictions on visitation were far less clear. Consequently, a reasonable official would not have known that the alleged actions violated the rights even had the court concluded that the rights had been violated. *Foulks v. Cole County, Mo.*, 991 F.2d 454, 456 (8th Cir.1993); *Cross v. City of Des Moines*, 965 F.2d 629, 631–32 (8th Cir.1992). The court reaffirms its conclusion that defendants are entitled to qualified immunity.

Upon the foregoing,

IT IS ORDERED

That plaintiff's January 24, 1994, *pro se* motions for reconsideration of the court's January 12, 1994, order (docket numbers 34 and 35) are granted to the extent that the court has reconsidered its previous ruling, and denied in all other respects. The court reaffirms its order of January 12, 1994, granting defendants' motion for summary judgment and dismissing this case.