**Adrian HERNANDEZ, et al., Plaintiffs,**

**v.**

**Superintendent Michael McGINNIS, et al., Defendants.**

**No. 01–CV–6351L.**

United States District Court, W.D. New York.

July 15, 2003.

Adrian Hernandez, Pine City, NY, Pro se.

Charles D. Steinman, New York State Attorney General, Rochester, NY, for Defendants.

*DECISION AND ORDER*

LARIMER, District Judge.

Plaintiffs, Adrian, Ashley, Ana, Javier, Jeffrey and Dennise Hernandez, appearing *pro se,* commenced this action under 42 U.S.C. § 1983. Plaintiffs allege that the four defendants, all of whom were, at all relevant times, employed by the New York State Department of Correctional Services ("DOCS"), violated plaintiffs' rights under the United States Constitution due to the temporary revocation of plaintiff Adrian Hernandez's visitation rights while he was an inmate at Southport Correctional Facility. Defendants have moved for summary judgment.

**FACTUAL BACKGROUND**

The complaint alleges that on June 20, 1998, Adrian Hernandez ("Adrian") was summoned to receive visitors who had come to Southport to see him. As Adrian was waiting to be allowed into the visitation room, a correction officer ("C.O.") conducted a pat frisk of Adrian. The C.O. asked Adrian to remove his sneakers. In one of the sneakers, the C.O. found a six-inch plexiglass shank. Adrian was immediately removed from the area and the visit did not occur. As a result of this incident, the C.O. filed a misbehavior report against Adrian, charging him with possession of a contraband weapon, smuggling, and violating facility visiting rules.

Shortly after these events, Adrian's cell was searched. During the search, it was discovered that the plexiglass lens to the cell light had been broken, and that an 8½-inch by 10½-inch piece of plexiglass was missing. This discovery led to a second misbehavior report against Adrian, charging him with destroying state property and tampering with state property.

A hearing on these charges was conducted on July 2, 1998, before defendant Hear-

ing Officer Richard Cerio. On July 3, 1998, Cerio found Adrian guilty of all five charges against him, and imposed a penalty of thirty months in the Special Housing Unit with a corresponding loss of good time. On administrative appeal, the penalty was modified to twenty-four months, and the determination was otherwise affirmed.

Also on July 3, Cerio submitted a memorandum to defendant Michael McGinnis, the Superintendent of Southport, advising him of Adrian's possession of the shank, and recommending that Adrian's visiting privileges be permanently revoked. On July 14, McGinnis permanently revoked Adrian's visiting privileges. Adrian appealed to defendant Glenn S. Goord, Commissioner of DOCS. On August 25, 1998, the revocation was affirmed by Goord's designee, defendant Anthony J. Annucci, Deputy Commissioner and Counsel of DOCS. The Memorandum Decision affirming the penalty (which is attached to the complaint in this action) also advised Adrian that he could "request a reconsideration of this revocation any time after it has been in effect for one year and on an annual basis thereafter," and that such a request should be directed to the superintendent of the facility in which Adrian was then housed.[1]

Adrian subsequently commenced a number of proceedings in state court seeking to reverse the disciplinary determination and penalty. All of them were dismissed. *See Hernandez v. Goord,* No. 98–2706 (Sup.Ct. Chemung County, Feb. 10, 1999) (Docket # 112, Ex. A); *Hernandez v. Goord,* No. 98–2754 (Sup.Ct. Chemung County, Feb. 10, 1999) (Docket # 112, Ex. B); *Hernandez v. Selsky,* No. 99–2557 (Sup.Ct. Chemung County, Mar. 13, 2000) (Docket # 112, Ex. C); *Hernandez v. McGinnis,* No. 99–2609 (Sup.Ct. Chemung County, Mar. 28, 2000) (Docket # 112, Ex. D).

As stated, Adrian was advised that he could seek reconsideration of the revocation of his visiting privileges after it had been in effect for a year. It appears that he did so on February 6, 2001, for in an Interdepartmental Communication dated June 4, 2001, George B. Duncan, the Superintendent of Great Meadow Correctional Facility (where Adrian was then located), informed Adrian that, pursuant to Adrian's February 6 request for restoration of visiting privileges, and Duncan's prior response indicating that he would consider restoration after June 1, 2001, Duncan was "approving [Adrian] for non-contact visiting, effective immediately," since it appeared that Adrian had met Duncan's conditions that he "remain in a program and report-free ...." Docket # 11, Ex. A. Duncan stated that if Adrian continued to meet those conditions, Duncan would consider restoration of contact visits on September 1, 2001.

Thus, Adrian was without visitation privileges from about June 20, 1998, when the shank and damage to his light were discovered, until about June 4, 2001. Plaintiffs commenced the instant action on July 17, 2001. Plaintiffs include Adrian and five of his relatives: his mother Ana; his brothers, Jeffrey and Javier; his sister Dennise; and his daughter Ashley (collectively,

1. Under DOCS regulations, "An inmate's rights to visit an approved visitor may be suspended or revoked after a superintendent's proceeding based on visit-related misconduct ...." 7 N.Y.C.R.R. § 200.5(a)(5). The regulations also provide that the penalty for attempting to introduce a contraband "[i]tem which is readily capable of being used to cause death or serious injury" is "[r]evocation of visiting rights." 7 N.Y.C.R.R. § 200.5(f). In the event of such a revocation, the inmate "may request a reconsideration of the revocation at any time after it has been in effect for one year and on an annual basis thereafter." 7 N.Y.C.R.R. § 200.5(d).

"family plaintiffs"). The family plaintiffs have not brought any prior actions or proceedings concerning these matters.

Plaintiffs allege that the finding of guilt on the disciplinary charges against Adrian, and the subsequent penalty, which prevented the family plaintiffs from visiting Adrian while the revocation was in effect, violated their rights to free association and due process under the First and Fourteenth Amendments to the United States Constitution, and that it constituted cruel and unusual punishment in violation of the Eighth Amendment.

## DISCUSSION

### I. Summary Judgment—General Standards

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Where the plaintiffs are proceeding *pro se,* the court will liberally construe the plaintiffs' pleadings, and "interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir. 1999) (citing *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, proceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment. *Carbonell v. Goord,* 99-CV-3208, 2000 WL 760751, *5 (S.D.N.Y. June 13, 2000).

Here, it is evident that there are no issues of material fact. Plaintiffs do assert that there are some factual issues about the truth or accuracy of certain entries in Adrian's "Inmate's Log of Visits." Those matters, however, have no bearing on the fundamental legal issue presented here: whether plaintiffs' factual allegations, if true, could possibly give rise to a cognizable claim. For the reasons that follow, I find that they cannot; and that defendants are entitled to judgment as a matter of law.

### II. Plaintiffs' Claims

It is well established that while "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution," *Turner v. Safley,* 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), prison restrictions that implicate prisoners' constitutional rights may be upheld if they are "reasonably related to legitimate penological interests," *id.* at 89, 107 S.Ct. 2254; *see also Duamutef v. Hollins,* 297 F.3d 108, 112 (2d Cir.2002). "The [Supreme] Court has counseled judicial restraint in the federal courts' review of prison policy and administration, noting that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.'" *Giano v. Senkowski,* 54 F.3d 1050, 1053 (2d Cir. 1995) (quoting *Turner,* 482 U.S. at 84, 107 S.Ct. 2254). "Moreover, the doctrines of separation of powers and federalism (where, as here, a state penal system is involved) dictate a policy of judicial restraint." *Id.* (citing *Turner,* 482 U.S. at 85, 107 S.Ct. 2254).

Before addressing plaintiffs' particular claims, I note that this deferential standard applies notwithstanding that this case implicates the rights of non-inmates as well as those of a prisoner. Although the family plaintiffs allege that their own rights were violated by the revocation of Adrian's visitation privileges, the Supreme Court has made clear that to apply a heightened level of scrutiny to cases involving prison regulations affecting the rights of both prisoners and outsiders would unreasonably constrain the corrections system. *See Thornburgh v. Abbott,* 490 U.S. 401, 410 n. 9, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989) ("any attempt to forge separate standards for cases implicating

the [First Amendment] rights of outsiders [and inmates] is out of step with" Supreme Court case law); *see also Brewer v. Wilkinson*, 3 F.3d 816, 823 n. 9 (5th Cir.1993) ("the *Thornburgh* Court stressed ... that even though prison regulations or practices might burden the fundamental rights of 'outsiders,' the proper inquiry was whether the regulation or practice in question was reasonably related to legitimate penological objectives"), *cert. denied*, 510 U.S. 1123, 114 S.Ct. 1081, 127 L.Ed.2d 397 (1994).

The Supreme Court very recently addressed the issue of whether restrictions on inmates' visitation privileges violate their constitutional rights in *Overton v. Bazzetta*, — U.S. —, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003). In *Bazzetta*, a class of state prisoners and their prospective visitors brought a § 1983 action challenging regulations that: (1) excluded, from family members with whom inmates were entitled to non-contact visits, any minor nieces and nephews and children as to whom parental rights had been terminated; (2) required all children visiting an inmate to be accompanied by a family member or legal guardian; (3) prohibited inmates from visiting with former inmates; and (4) subjected inmates with two substance-abuse violations to a ban of at least two years on all future visitation, other than visits from attorneys and members of the clergy.

The Court held that these regulations did not infringe a constitutional right of association. The Court began with the observation that "[a]n inmate does not retain rights inconsistent with proper incarceration," and that "freedom of association is among the rights least compatible with incarceration." *Id.* at 2167. The Court added that it was neither holding nor implying "that any right to intimate association is altogether terminated by incarceration or is always irrelevant to claims made by prisoners," but that the regulations at issue here would be upheld because they "b[ore] a rational relation to legitimate penological interests." *Id.*

In deciding whether a regulation affecting prisoners' constitutional rights survives a constitutional challenge, the Court stated, four factors are relevant: "whether the regulation has a 'valid, rational connection' to a legitimate governmental interest; whether alternative means are open to inmates to exercise the asserted right; what impact an accommodation of the right would have on guards and inmates and prison resources; and whether there are 'ready alternatives' to the regulation." *Id.* at 2168 (quoting *Turner*, 482 U.S. at 89–91, 107 S.Ct. 2254). Analyzing each of these factors with respect to the challenged regulations, the Court found that the regulations did not infringe upon the plaintiffs' constitutional right of association or their right to substantive due process. *Id.* at 2168–70.

The Court also held that the restriction on visitation for inmates with two substance-abuse violations was not a cruel and unusual condition of confinement in violation of the Eighth Amendment. The Court stated that although the "restriction undoubtedly makes the prisoner's confinement more difficult to bear," it "[wa]s not a dramatic departure from accepted standards for conditions of confinement"; did not "create inhumane prison conditions, deprive inmates of basic necessities or fail to protect their health or safety"; and did not "involve the infliction of pain or injury, or deliberate indifference to the risk that it might occur." *Id.* at 2170. The Court added that "[i]f the withdrawal of all visitation privileges were permanent or for a much longer period, or if it were applied in an arbitrary manner to a particular inmate, the case would present different considerations," but concluded that "[a]n individual claim based on indefinite withdrawal

of visitation or denial of procedural safeguards ... would not support [a finding] that the entire regulation is invalid." *Id.*

After considering the facts of the instant case in light of the factors set forth in *Bazzetta,* I find that the roughly three-year suspension of Adrian's visitation rights did not violate plaintiffs' constitutional rights. This revocation is similar to the ban imposed on inmates with two substance-abuse violations that the Supreme Court upheld in *Bazzetta.* The revocation also serves a similar legitimate purpose: deterring visit-related misconduct. The regulations pursuant to which plaintiff's visitation privileges were revoked "promote internal security, perhaps the most legitimate of penological goals," *id.* at 2168. Moreover, "[w]ithdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior ...." *Id.* at 2168–69.

There is also no indication from the record that the relevant regulations were "treated as a *de facto* permanent ban" here, *id.* at 2169, which the Supreme Court indicated could affect the calculus of whether the regulations are reasonably related to a legitimate objective. Although McGinnis stated that he had "permanently revoked" Adrian's visitation privileges, both the DOCS regulations and Annucci's decision made clear that the revocation was of indefinite length, with a minimum term of one year, and the revocation of Adrian's privileges lasted just under three years. That is similar to the minimum two-year ban upheld in *Bazzetta.*

The other factors considered in *Bazzetta* also support this holding. First, during the period when Adrian's privileges were revoked, he could "communicate with persons outside the prison by letter and telephone." *Id.* Although that might not be as convenient or enjoyable as actual visitation, "[a]lternatives to visitation need not be ideal ...; they need only be available." *Id.*

Next, to permit visitation under these circumstances-where an inmate has been found guilty of attempting to introduce a weapon into a visitation room-"would impair the ability of corrections officers to protect all who are inside a prison's walls. When such consequences are present, we are 'particularly deferential' to prison administrators' regulatory judgments." *Id.* (quoting *Turner,* 482 U.S. at 90, 107 S.Ct. 2254). Finally, plaintiffs have not suggested any alternatives that would meet the "high standard" required to show that the penological interests at stake could have been equally well served while fully accommodating the asserted right. *Id.*

I also find that plaintiffs' Eighth Amendment rights were not violated. As the *Bazzetta* Court stated, the penalty imposed here "undoubtedly ma[de] the prisoner's confinement more difficult to bear," but it did not dramatically depart from accepted standards for conditions of confinement, create "inhumane prison conditions," or otherwise give rise to any conditions or events that would violate the Eighth Amendment's proscription of "cruel and unusual punishments." *Id.* at 2170. As noted above, the withdrawal of Adrian's visitation privileges was neither permanent nor "for a much longer period" than those at issue in *Bazzetta,* nor is there any indication that it was "applied in an arbitrary manner" here. *Id.* Accordingly, plaintiffs' Eighth Amendment claim is without merit.

## CONCLUSION

Defendants' motion for summary judgment (Docket # 9) is granted, and the complaint is dismissed.

IT IS SO ORDERED.