FILED IN
COURT OF CRIMINAL APPEALS

April 27, 2015

ABEL ACOSTA, CLERK

PD-1505-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/27/2015 10:33:51 AM
Accepted 4/27/2015 10:43:50 AM
ABEL ACOSTA
CLERK

Case No. PD-1505-14

---

In the Court of Criminal Appeals of Texas

---

David Schlittler v. The State of Texas

---

On Discretionary Review
of Appeal No. 12-13-00269-CR
in the Twelfth Court of Appeals of Texas
at Tyler

---

**Appellant's Reply Brief**

---

State Counsel for Offenders
Attorney for Appellant

Kenneth Nash
Texas Bar No. 14811030
P. O. Box 4005
Huntsville, TX 77342
Telephone no. 936-437-5291
Facsimile no. 936-437-5295
E-mail address:  ken.nash@tdcj.texas.gov

**Oral Argument Requested and Previously Granted**

# Table of Contents

Table of Authorities…………………………………………………………………..3-4

Reply Issues…………………………………………………………………………....5

      1.  Although a modified conservatorship order severely limited
      Schlittler's possessory rights to his son, did Section 38.111, Penal
      Code, violate his fundamental liberty interest by criminalizing the
      exercise of his parental rights?

      2.  By authorizing an ex-spouse to withhold her consent to an inmate's
      right to contact his son, does Section 38.111, Penal Code, constitute
      an improper delegation of the State's legislative power to a private
      party?

Summary of the Argument………………………………………………………….5-6

Argument…………………………………………………………………………..6-14

Prayer…………………………………………………………………………….....14

Certificate of Compliance……………………………………………………………14

Certificate of Service………………………………………………………………...15

# Table of Authorities

**Cases**

*Garber v. Beard*, 851 A.2d 222 (Penn. Cmwlth. 2004)………………………………9

*G.J Deasy Investment, Inc. v. Mattox*, 778 F.2d 1091 (5th Cir. 1985)……………10

*Hernandez v. McGinnis*, 272 F.Supp.2d 223 (W.D. N.Y. 2003)…………………...9

*Jannin v. State*, 42 Tex. Crim. 631, 62 S.W. 419 (1901)…………………………10

*Mitchell v. Smith*, 817 N.W.2d 742 (Minn. App. 2012)……………………………9

*Navin v. Iowa Department of Corrections*, 843 F.Supp. 500
(N.D. Iowa 1994)…………………………………………………………………...9

*N.E.W. v. Kennard*, 952 F.Supp. 714 (D. Utah 1997)……………………………...9

*Odenwalt v. Gillis*, 327 F.Supp.2d 502 (M.D. Penn. 2004)………………………..9

*Planned Parenthood of Central Missouri v. Danforth*,
428 U.S. 52 (1976)…………………………………………………………………9

*Planned Parenthood of Southeastern Pennsylvania v. Casey*,
505 U.S. 833 (1992)………………………………………………………………..9

*Proctor v. Andrews*, 972 S.W.2d 729 (Tex. 1998)…………………………10,11,12

*Robinson v. Palmer*, 841 F.2d 1151 (D.C. Cir. 1988)……………………………...9

*Samford v. Dretke*, 562 F.3d 674 (5th Cir. 2009)………………………………...8

*Santosky v. Kramer*, 455 U.S. 745 (1982)…………………………………………7

*Stockton v. Offenbach*, 336 S.W.3d 610 (Tex. 2011)……………………………...8

*Texas Boll Weevil Eradication Foundation, Inc. v. Lewellen*,
952 S.W.2d 454 (Tex. 1997)………………………………………………………11

*Troxel v. Granville*, 530 U.S. 78 (1987)…………………………………………8

*Wirsching v. Colorado*, 360 F.3d 1191 (10th Cir. 2004)……………………………9

*Wisconsin v. Yoder*, 406 U.S. 205 (1972)………………………………………..7

**Constitutions**

Art. III, Sec. 1, Texas Constitution………………………………………………..10

**Reply Issues**

1.  Although a modified conservatorship order severely limited Schlittler's possessory rights to his son, did Section 38.111, Penal Code, violate his fundamental liberty interest by criminalizing the exercise of his parental rights?

2.  By authorizing an ex-spouse to withhold her consent to an inmate's constitutional right to contact his son, does Section 38.111, Penal Code, constitute an improper delegation of the State's legislative power to a private party?

**Summary of the Argument**

**1. Criminalization of Schlittler's exercise a fundamental liberty interest.**

Contrary to the State's argument, it wasn't the SAPCR court's modified conservatorship order, but the application of Section 38.111, Penal Code, which infringed Schlittler's fundamental liberty interest as a parent. Moreover, the State has failed to discharge its burden of proving, and no court has yet to find, that Schlittler has been an unfit parent, that the exercise of his parental rights will jeopardize the health or safety of his son, or that the exercise of his parental rights will potentially impose significant social burdens.

5

**2. Improper delegation of the State's legislative power to a private party.**

A state may not confer upon a private person a power it cannot exercise itself. Assuming the State even possesses such power to impair a father's fundamental liberty interest towards his son, subsection (a)(2) operates as an improper delegation of a State's legislative power to a private entity when examined under the so-called *Boll Weevil* test described below; therefore, Section 38.111, Penal Code, as a whole cannot survive a strict-scrutiny review.

**Argument**

**1. Criminalization of Schlittler's exercise of a fundamental liberty interest.**

Under the terms of the modified conservatorship order, the SAPCR court severely limited Schlittler's parental rights toward his son, B.S. On that basis, the State argues, Section 38.111, Penal Code, did not abridge his fundamental liberty interest. *State's Brief* at 13-14. Despite "credible evidence" that Schlittler sexually abused his former step-daughter, the SAPCR court found "that awarding [him] access to the child [B.S.] would not endanger the child's physical health or emotional welfare and would be in the best interest of the child[,]" so the SAPCR court awarded him supervised visitation "[e]very 1st, 3rd and 5th Saturday of each month for a maximum time of two hours." 6 R.R. (State's Exhibit 2A, at 6-7).

6

This supervised visitation schedule commenced on September 18, 2007. 6 R.R. (Exhibit 2, at 23).

Curiously, Schlittler allegedly violated section 38.111 on September 4, 2008, (see C.R. at 9, 323), several months after the SAPCR court entered its modified conservatorship order on November 11, 2007, (see 6 R.R. (State Exhibit 2, at 23)). Even after Schlittler was sentenced to prison on April 3, 2008, for sexually assaulting his former step-daughter (see 6 R.R. (State's Exhibit 1)), the SAPCR court's modified conservatorship order remained in effect. Contrary to the State's argument, see *State's Brief* at 13-14, it wasn't the modified conservatorship order which effectively severed Schlittler's parental rights to his son, but the application of the statute.

The State may not interfere with Schlittler's parental rights without first showing that the exercise of his parental rights will jeopardize the health or safety of his son or that the exercise of his parental rights will potentially impose significant social burdens. *Wisconsin v. Yoder*, 406 U.S. 205, 233-34 (1972). As argued in his initial brief, see *Appellant's Brief* at 21, 24-25, there have been absolutely no judicial findings that Schlittler has been an unfit parent,[1] that the

---

[1] Because Schlittler was found guilty beyond a reasonable doubt of sexually assaulting is former step-daughter, the State argues that there was no violation of his fundamental right to parent his son; therefore, the State contends that it satisfied its due-process burden as described in *Santosky v. Kramer*, 455 U.S. 745 (1982). *State's Brief* at 16-17. The State's reliance on *Santosky* is mis-placed. In the *Santosky* case, the Supreme Court held that procedural due process requires at least clear and convincing proof of permanent neglect before the State of New

exercise of his parental rights will jeopardize the health or safety of his son, or that the exercise of his parental rights will potentially impose significant social burdens. Apparently dissatisfied with the SAPCR court's modified conservatorship order, the State (through Schlittler's ex-wife) resorted to the statute to accomplish what couldn't be done in the SAPCR court.

## 2. Improper delegation of the State's legislative power to a private party.

The constitutionality of a statute, as applied, presents a legal question; therefore, the case is reviewed *de novo*. *Stockton v. Offenbach*, 336 S.W.3d 610, 615 (Tex. 2011). Whether the State has impaired a parent's right to exercise care, custody, and control over his child is determined on a case-by-case basis. *Troxel v. Granville*, 530 U.S. 78, 95-96 (1987) (Kennedy, J., dissenting). Here, the State concedes that Section 38.111, Penal Code, should be subjected to a strict-scrutiny analysis and that the statute should be upheld only if it is narrowly tailored to promote a compelling state interest.[2] *State's Brief* at 15, 19-20. However, the

---

York could terminate the rights of parents in their natural children. *Santosky*, 455 U.S. at 747-48. Besides using Schlittler's conduct towards his former step-daughter as a circumstance to justify an intrusion upon his fundamental right as a parent towards his son, the State can point to no place in the record demonstrating that Schlittler has permanently neglected his son or has been found to be an unfit parent of his son.

[2]      Because Section 38.111, Penal Code, is a criminal statute and not a prison policy, the State apparently agrees with Schlittler's argument (see *Appellant's Brief*, at 29-30, 42-43) that the relaxed standard for review set forth in *Turner v. Safley*, 482 U.S. 78 (1987) does not apply. Cf. *Samford v. Dretke*, 562 F.3d 674 (5th Cir. 2009) (upholding TDCJ's "negative mail" policy

State argues that, by conferring upon Schlittler's ex-wife the decision to restrict all contact with his son, the statute is narrowly tailored to promote the State's compelling interest to protect both Schlittler's sexual-assault victim *and* her half-brother. *State's Brief* at 19, 22-23.

As a general rule, a state may not confer upon a private person a power it cannot exercise itself. *Planned Parenthood of Central Missouri v. Danforth*, 428 U.S. 52, 67-72 (1976) (invalidating a statutory provision conferring upon a husband "a veto power exercisable for any reason whatsoever or for no reason at all" over his wife's constitutional right to an abortion during the first 12 weeks of pregnancy). See *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 898 (1992) ("The husband's interest in the life of the child his wife is

---

because Samford could communicate with his sons through his mother); *Wirsching v. Colorado*, 360 F.3d 1197 (10th Cir. 2004) (upholding a prison regulation denying Wirsching visitation with his daughter because he was allowed to contact her by letter and telephone); *Robinson v. Palmer*, 841 F.2d 1151 (D.C. Cir. 1988) (upholding a visitation-suspension policy because it left open some communication channels between inmate and excluded spouse); *N.E.W. v. Kennard*, 952 F.Supp. 714 (D. Utah 1997) (upholding Salt Lake County's visitation policy disallowing visits from children under 8 years of age because the inmate could request a "special visit" with his children); *Navin v. Iowa Department of Corrections*, 843 F.Supp. 500 (N. D. Iowa 1994) (upholding a visitation policy restricting unaccompanied minors because it did not operate as a total prohibition); *Hernandez v. McGinnis*, 272 F. Supp.2d 223 (W.D. N.Y. 2003) (upholding a non-permanent revocation of visitation privileges because the inmate had other means (by letter and telephone) of maintaining contact with his family members); *Odenwalt v. Gillis*, 327 F.Supp.2d 502 (M.D. Penn. 2004) (upholding a no-contact policy because the inmate could exercise *non*-contact visitation with his children); *Garber v. Beard*, 851 A.2d 222 (Penn. Cmwlth. 2004) (upholding a prison policy disallowing contact visitation between sex offenders and minor children because the policy permitted *non*-contact visitation); and *Mitchell v. Smith*, 817 N.W.2d 742 (Minn. App. 2012) (upholding the prison policy disallowing sex offenders to visit minor children because it permitted communication through letter and telephone).

9

carrying does not permit the State to empower him with this troubling degree of authority over his wife.").

Assuming the State even possesses such power to impair a father's fundamental liberty interest towards his son, Schlittler contends that subsection (a)(2) operates as an improper delegation of the State's legislative power to a private entity, *i.e.*, his ex-wife. The Texas Constitution generally prohibits the State from delegating governmental power to a private entity. Art. III, Sec. 1, Tex. Const.;[3] *Proctor v. Andrews*, 972 S.W.2d 729, 733 (Tex. 1998). See *Jannin v. State*, 42 Tex. Crim. 631, 62 S.W. 419 (1901) (wherein this Court remarked that allowing railroads to place an endorsement on tickets making trafficking in such tickets a penal offense was a delegation of an unauthorized legislative authority). See also *G.J. Deasy Investment, Inc. v. Mattox*, 778 F.2d 1091 (5th Cir. 1985) (noting that "[t]here is a constitutional prohibition against delegation of legislative power to private groups").

Whether the State has impermissibly delegated its legislative authority to a private entity is subjected to a 'more searching scrutiny' through the *Boll Weevil*

---

[3]     Article III, Section 1 provides:  "The Legislative power of this State shall be vested in a Senate and House of Representatives, which together shall be styled 'The Legislature of the State of Texas.'"

test[4] set forth in *Proctor v. Andrews*, 972 S.W.2d at 735, than delegations of

legislative authority to the executive or judicial branches of governments:

> 1.  Are the private delegate's actions subject to a meaningful review by a state agency or other branch of government?
>
> 2.  Are the persons affected by the private delegate's actions adequately represented in the decision-making process?
>
> 3.  Is the private delegate's power limited to making rules, or does the delegate also apply the law to particular individuals?
>
> 4.  Does the private delegate have a pecuniary or other personal interest that may conflict with his or her public function?
>
> 5.  Is the private delegate empowered to define criminal acts or impose criminal sanctions?
>
> 6.  Is the delegation narrow in duration, extent, and subject matter?
>
> 7.  Does the private delegate possess special qualifications or training for the task delegated to it?
>
> 8.  Has the legislature provided sufficient standards to guide the private delegate in its work?

*Meaningful Governmental Review*

The first factor weighs against the delegation. The statute provides no

procedure for Schlittler to compel a governmental branch or body to review his ex-

wife's decision to withhold consent.

---

[4]     The *Boll Weevil* test is derived from *Texas Boll Weevil Eradication Foundation, Inc. v. Lewellen*, 952 S.W.2d 454 (Tex. 1997). *Proctor v. Andrews*, 972 S.W.2d at 735.

*Adequate Representation of Affected Persons*

The second factor weighs against the delegation. The statute contains no mechanism for Schlittler to "have a say," *Proctor v. Andrews*, 972 S.W.2d at 736, in his ex-wife's decision to withhold consent.

*Delegation of Rule Application as well as Rule-Making*

The third factor weighs against the delegation. The application of the statute against Schlittler rested solely with his ex-wife. Moreover, she exercised her power to withhold consent in derogation of Schlittler's right to supervised visitation delineated within the modified conservatorship order. 6 R.R. (State's Exhibit 2A, at 6-7).

*Conflict of Interest*

The fourth factor weighs against the delegation. As the State acknowledges, see *State's Brief* at 18, 22-23, Schlittler's ex-wife has a "private interest as stake," *Proctor v. Andrews*, 972 S.W.2d at 736, to the extent that Schlittler's attempt to communicate with his son "undermined the mother's authority and rights," *State's Brief* at 23.

*Criminal Authority*

The fifth factor weighs against the delegation. By withholding her consent, Schlittler's ex-wife defined his attempt to contact his son as a third-degree felony under the statute's express terms as set forth in subsections (a)(2) and (d).

*Narrow Delegation*

Besides swallowing the narrowly-tailored requirement of the compelling-state-interest test, the sixth factor weighs heavily against the delegation. The delegation is not narrow in duration, extent, and subject matter. The statute conferred upon Schlittler's ex-wife veto-proof power to prohibit all parental contact until B.S. attained majority.

*Special Qualifications or Training*

The seventh factor weighs against the delegation. The statute imposes no special qualifications or training upon Schlittler's ex-wife before she elects to withhold her consent to the enjoyment of his fundamental liberty interest as B.S.'s parent.

*Sufficient Standards*

Finally, the eighth factor weighs against the delegation. The statute lacks any standards guiding Schlittler's ex-wife in her decision to withhold her consent to Schlittler's contact with his son.

In short, the statute flunked the *Boll Weevil* test miserably. Because subsection (a)(2) operates as an unconstitutional delegation of the State's

legislative power upon a private party, subsection (a)(2) does not narrow the statute as maintained by the Twelfth Court of Appeals, see *Schlittler v. State*, No. 12-13-00269-CR, 2014 Tex. App. LEXIS 11904 at *6 (Tex. App.—Tyler, delivered October 30, 2014, pet. granted); therefore, the statute cannot survive a strict-scrutiny review because the statute is not narrowly tailored to accomplish a compelling state interest.

## Prayer

Schlittler prays that this Court declare Section 38.111, Penal Code, unconstitutional as applied to him, and reverse the Twelfth Court of Appeal's judgment (and the trial court's judgment) and dismiss the indictment filed in this case.

Respectfully submitted,

State Counsel for Offenders
Attorney for Appellant

/s/ Kenneth Nash
Texas Bar No. 14811030
P. O. Box 4005
Huntsville, TX 77342
Telephone no. 936-437-5291
Facsimile no. 936-437-5295
E-mail address: ken.nash@tdcj.state.tx.us

## Certificate of Compliance

In compliance with Rule 9.4, Rules of Appellate Procedure, I certify that this computer-generated document complies with the typeface requirements of Rule

9.4(e) and is comprised of 2,129 words (excluding the matters listed in Rule 9.4(i)(1)).

/s/ Kenneth Nash

**Certificate of Service**

In compliance with Rule 9.5(e), Rules of Appellate Procedure, I certify that a copy of the foregoing *Appellant's Reply Brief* was served upon the State's attorney and upon the State Prosecuting Attorney noted below by one or more of the following:  certified mail (return receipt requested), facsimile transfer, or electronic mail (e-mail), on April 27, 2015.

Melinda Fletcher
Special Prosecution Unit
P. O. Box 1744
Amarillo, TX 79105
Facsimile no. 866-923-9253
E-mail address:  mfletcher@sputexas.org

Lisa C. McMinn
State Prosecuting Attorney
P. O. Box 13046
Austin, TX 78711
Facsimile no. 512-463-5724
E-mail address:  information@spa.texas.gov

/s/ Kenneth Nash